STATE of North Dakota, Plaintiff and Respondent,

v.

Walter REISTER, a minor, and Fred Reister, father, and Ann Reister, mother, Defendants and Appellants.

No. 7621.

Supreme Court of North Dakota.

Dec. 18, 1956.

William L. Paulson, Valley City, for defendants and appellants.

M. C. Fredricks, State's Atty. for Stutsman County, Jamestown, for plaintiff and respondent.

MORRIS, Judge.

This is an appeal from an order of the juvenile court of Stutsman County entered October 25, 1955, committing Walter Reister, a child sixteen years of age, to the State Training School at Mandan, North Dakota, until he becomes twenty-one years old and appointing the superintendent of the training school as the guardian of his person.

On May 9, 1955, proceedings were instituted in the juvenile court by George Burchill, juvenile commissioner of the Fourth Judicial District, charging Walter Reister with being a delinquent and neglected child. Summons was issued to Walter Reister, his father Fred Reister, and his mother Ann Reister, all of whom forthwith appeared in the juvenile court and a hearing was had before Honorable H. E. Rittgers, District Judge, acting as juvenile judge, which resulted in an order taking Walter into custody of the court as a juvenile delinquent and paroling him to his father. The transcript of the evidence taken at that hearing discloses that the basis of the court's action was several thefts. It also appeared that Walter did poorly in school; that he did not profitably employ his spare time, was prone to fall into the company of companions who had a bad influence upon him; that he was untruthful and lacked proper parental supervision and discipline.

By its order the court took jurisdiction of Walter as a ward of the state for the purposes of the juvenile law. Section 27–1610, NDRC 1943. No appeal has been taken from that order. By the order the court acquired continuing jurisdiction over the person of the child. Section 27–1620, NDRC 1943.

On October 25, 1955, Walter Reister, his father, and his mother again appeared before the juvenile court pursuant to a notice previously served upon them. They were accompanied and represented by an attorney. A hearing was had which resulted in the order committing Walter Reister to the State Training School, from which this appeal is taken. A trial de novo in this court has been demanded. At that hearing Walter Reister was accused of acts amounting to the taking of indecent liberties with the persons of individuals under the age of eighteen years, which is made a felony by Section 12–3011, NDRC 1953 Supp. Involved in the episode were three young children, two of them, P and C, about five and four years of age respectively, were sister and brother. These two children, together with another little girl, M, five years of age, were in the charge of a baby sitter while their mothers were at work on the afternoon of October 11, 1955. We have substituted letters for the names of the children. They obtained permission from the sitter to go and play with another little girl in the neighborhood. The baby sitter, a married woman, testified without objection that in a short time they came home and P came to the door and said: "C

wants to go to the store." C is the little boy. The testimony then continues:

"I said, 'Where is C?' and She said, 'He is outside,' so I called him and he came and I said, 'What is it you are going to do?' He said, 'I want to go to the store.' 'C,' I said, 'That is out because you know you don't go to the store unless I am with you. What do you want at the store, we were there just the other day?' He said, 'Well, I've got a penny.' Naturally, I got curious. I said, 'You hadn't any money when you came this morning?' He said, 'No.' I said, 'Where did you get it?' The girls spoke and said, 'We got some money, too.' So, I said to the girls, 'Where did you get the money?' C spoke up and said, 'The big Reister boy called us over and asked us to come over into the garage.' So, I said to C, 'I have told you you couldn't play there because there are no playmates there.' So, he said, 'Well, but he called us over and we went.' I said to the girls, 'Did you go?' They said, 'Yes.' I said, 'All right, how did you get the money?' C said, 'The big Reister boy made us take down our pants.' I said, 'Now, C, are you sure? He didn't.' C said, 'You are lying; he did.' I said, 'I am not lying, C, I am only asking you and I want you to tell the truth, and I don't want you to lie.' So the girls spoke up and said, 'He did. It is true.' So, I went about it in a roundabout way, and I said to C, how much money do you have, and he said, 'A penny.' I said to P, 'Let's see yours.' She had a nickel. So, I said, 'Why, P, how do you rate, a nickel? Tell me how you got the nickel; maybe I can go and get a nickel.' So, she said, 'Well,' she said, 'he made me take down my pants and then he went down there and played,' and she showed me, and I said, 'P, are you sure?' I said, 'You know what God will do if we lie?' She said, 'Well, he did, I am not lying.' So I

said, 'Well, you had better come in the house for the rest of the day.' "

The baby sitter told the mothers of the children what had happened and upon being asked the children told their mothers the same story that they had told the sitter. As soon as the little girl, M, was taken home that evening she related to her mother substantially the same facts that the children had told the baby sitter. There was no objection to the mothers' testimony. The interrogations upon direct examination were made by the court. Counsel for the defendant was permitted to cross-examine these witnesses. This cross-examination discloses that in questioning the children the mothers did not suggest the facts to them but permitted them to tell of the affair in their own way.

Walter Reister was also interrogated by the court. He says that he was in the garage with the doors open and the little boy came in and took a knife after Walter had forbidden him to take it. Walter says: "I gave him a licking, and then I gave him seven cents, and I told him he was supposed to go home, and at that time I went in the house." He said he never saw the little girls at all.

There was also introduced in evidence a written report of a psychological evaluation of Walter Reister by a "Clinical Psychologist" employed by the department of public welfare of the State of North Dakota. The examination which resulted in this report, which is dated June 17, 1955, was made at the request of the court after the first hearing on May 9, 1955. The psychologist gives him an intelligence quotient of 55 and says:

"Schooling has been an impossible task for him, and at the best frustratingly detrimental. He could not begin to do required work in the usual school setting. A short term type of special education for very slow learners would have been the very most he could have encompassed.

"He should definitely not be placed in school again."

At the close of the testimony the court stated that he had reached the conclusion that the parents could not control Walter; that the only place where he could be given proper control and training was at the State Training School. The court then said:

"It will be the Order and Judgment of the Court that Walter Reister be confined and committed to the State Training School for a period until he is 21 years of age.

"It is so ordered."

■ Our task is to determine whether the order made by the court was a proper one in the light of the record here presented. The basic question is whether it is for the best interest of Walter Reister and the best interest of the State of North Dakota, including the community in which he lives, that he be committed to the State Training School. It is unnecessary that we repeat the testimony arguendo or dwell upon the evidence other than to comment on its credibility. While the three children are of tender age and therefore of limited understanding and reasoning power with respect to matters concerning which normal adults are familiar, they appear to have been children of at least normal intelligence for their age. Their very simplicity of thought and action militates against the possibility that they fabricated the story or conspired together to tell it. Walter Reister was present at the time and place and had the opportunity to do what they said he did. The children were playing together. They left the house together and in a few minutes they came back together and told the baby sitter their story. They had seven cents. Walter says that the little boy came into the garage alone, took a knife, Walter spanked him for it, and he gave him seven cents when he cried. The story told by the little children, when considered in light of all the circumstances, is far more credible than that told by Walter. The trial court in effect so found. We agree with him.

When this unfortunate incident is considered in connection with Walter's former difficulties and his obvious lack of capacity and stability, the action taken by the trial court was proper if not in fact imperative.

■■ None of the three children testified nor were they questioned by the court during the hearing. After he announced his decision the judge retired to his chambers with only the mothers, the baby sitter, the three children, and the court stenographer present. There he briefly interrogated the children and received answers similar to those reported by the witnesses in their testimony at the hearing. The defendants claim that this procedure was highly irregular and deprived the defendant Walter Reister and his counsel of the opportunity to confront witnesses against him. Had these proceedings in the court's chambers been conducted as a part of the hearing and before the court had decided the matter, it might have amounted to a serious irregularity. Our statute, Section 27-1618, NDRC 1943, while providing that "The court may conduct the hearing in an informal manner." does not authorize the court to hear testimony or conduct a part of the hearing out of the presence of the defendant. Professsor Wigmore, in commenting on statutes that liberalize procedure in juvenile courts, says:

"But the last-mentioned one—hearing the testimony in the party's absence—goes clearly over the borderline of prudence. A technical enforcement of the orthodox rule for every detail of the proof need not be urged. But that the judge should have the *power* to commit to long detention any person without giving the person *any opportunity to hear the substance of the testimony against him,* is fundamentally unsound and practically dangerous. That provision should be eliminated from those statutes, and no judge in practice should allow himself to employ it." Wigmore on Evidence, Third Edition, Section 1400.

When the judge retired to his chambers he had in open court announced his decision and given the reasons therefor. The hearing was at an end. The proceedings had in chambers in no way affected that decision.

Giving consideration only to the record made at the hearing in open court, we reach the conclusion that the order of the trial court is correct and it is hereby affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.