In the Matter of Michael John KENNEDY, Mary Ann Kennedy, Jane Kathleen Kennedy, Darlene Kennedy, LeRoy Kennedy, and Patrick James White, Children Under the Age of Eighteen Years.

Mary Kennedy WHITE, Appellant,

v.

Mable E. CALLAHAN, Juvenile Commissioner, Respondent.

No. 7944.

Supreme Court of North Dakota.

Aug. 10, 1961.

366

Day, Stokes, Vaaler & Gillig, Grand Forks, for appellant.

Carlton G. Nelson, State's Atty., Grand Forks, for respondent.

Nilles, Oehlert & Nilles, Fargo, amicus curiae.

STRUTZ, Judge.

This is an appeal from an order denying the appellant's motion to vacate and set aside a judgment of the trial court terminating the parental rights of the appellant in and to the minor children named therein.

The facts, so far as they are pertinent to this appeal, are as follows:

The appellant is the mother of six minor children. The older two are children of a former husband from whom the appellant is divorced; the next two are children born out of wedlock and for whom paternity has never been legally established; and the two younger children are those of a subsequent marriage. At the time of the events leading up to the judgment terminating her parental rights to the children, the present husband of the appellant was serving time in the State penitentiary in Bismarck.

In December of 1958, a petition was filed in the juvenile court of Grand Forks County praying that the court declare such minor children to be dependent, neglected, and abandoned children, and that their care, custody, and control be transferred to the director of the division of child welfare of the Public Welfare Board of the State of North Dakota, to a licensed children's placing agency, or to some suitable adult persons to be designated by the court, and that the parental rights of the parents, including the appellant, be terminated. Judge Olger B. Burtness, in writing, ordered that such petition be filed; that an investigation be made into the matter and that a hearing be had on such petition, fixing the time for such hearing at 10 a. m. on February 3, 1959.

The order fixing time and place for hearing such petition was personally served on the appellant by the sheriff of Grand Forks County, as is shown by the return of service on file in this action.

On February 3, at the time set for such hearing, it appeared that the father of the appellant had just passed away and was to be buried on the very day set for hearing. The court thereupon, with the consent of the attorney for the appellant, continued the hearing to February 10, 1959, at 10 a. m.

On February 10, 1959, the matter came on for hearing, with the appellant and her attorney both being personally present in court. Evidence was introduced in support of and in opposition to the petition. We do not believe it is necessary to discuss this evidence in detail, and will only say that it overwhelmingly supported the· allegations of the petition. At the hearing on February 10, it was agreed that the matter be continued to the following day to enable the mother of the appellant to appear and testify.

On the following day, the appellant and her attorney both were present in court throughout the hearing. The court, at the close of the hearing, took the matter under· advisement and announced that he would render his decision at a later date.

On February 16, 1959, at 3:30 p. m., with the appellant and her attorney again being present in court, the court stated that he was finding it extraordinarily difficult to reach a decision and therefore he was continuing the matter to April 7, 1959, at 10 a. m.; that, in the meantime, the temporary order previously entered would remain in full force and effect.

At 10:15 a. m. on April 7, 1959, the matter again came on for hearing, with the appellant being personally present but without her attorney. Further evidence was introduced to show that the children were being neglected and improperly cared for. The court, however, still was reluctant to terminate the appellant's parental rights and again continued the hearing, this time to 10 a. m. on August 19, 1959. This continuance was ordered with a view of giving the appellant a further chance to show that she could properly care for her own children. The court stated that if, in the meantime, the children were not being given proper care, attention, and supervision, the matter could be brought before the court on a date prior to the date to which the hearing was being continued.

Thereafter, on June 27, 1959, the court was informed that the children had been found abandoned in an unfurnished house; that there was evidence that the appellant had wholly failed to provide a proper home for the children following the hearing on April 7; that the furniture which she had obtained for the use of the family following the prior hearing had all been sold with the exception of one davenport, and that such furniture had been removed from the home.

The record further shows that the court thereupon set the matter for hearing on July 2, 1959, at 10 a. m., and that notice thereof was attempted to be given by sending to the appellant a copy of such notice, addressed to her at her last-known address. She did not appear at the hearing.

At the hearing on July 2, it appeared that the notice of the advanced date of hearing had been mailed to the appellant at her last-known address. The record shows, in support of the petition to terminate parental rights, that the appellant had had numerous gentlemen-callers, as many as thirty-two having called on her on one Sunday, and that at the time the matter was brought to the attention of the court, on June 27, the appellant had been absent from the home and the children for a period of at least two days, during which time the children had been left alone; that the children thereupon were taken to the police department for care.

On this record, the court terminated the parental rights of the appellant to the minor children, and the custody of all but the oldest was given to the Public Welfare Board of the State of North Dakota. Judgment terminating parental rights of the appellant subsequently was entered. No appeal was taken from such judgment, but some eleven months after the entry of judgment the appellant moved to vacate and set the same aside on the ground that the trial court was without jurisdiction to enter judgment following the hearing on July 2, 1959.

The trial court denied the motion to vacate the judgment, and this appeal thereupon was taken from such order.

In support of her appeal, the appellant specified numerous errors. We have examined the specifications of error and find that most of them are without any merit whatsoever. The contention of the appellant, however, that the trial court was without jurisdiction to order a termination of the appellant's parental rights to the children following the purported hearing on July 2, 1959, must be given serious consideration.

■ Jurisdiction relates to the power of the court to act in any given situation. All of the powers of any court must be derived from the government which created it.

■ The present law providing for district courts to act as juvenile courts was enacted as Chapter 212 of the North Dakota Session Laws of 1943. In its present form, as amended, it appears as Chapter 27-16 of the Century Code. This statute was enacted under the police powers of the State, and established a new system and method of dealing with juveniles. State ex rel. City of Minot v. Gronna, 79 N.D. 673, 59 N.W.2d 514.

■ The district court, acting as a juvenile court, has only such powers as are given to it by law. In re Blackey, 53 N.D. 852, 208 N.W. 238.

The jurisdiction of the district court has been enlarged under the Juvenile Court Act. It is not a separate and distinct court, but is the same court with enlarged powers. State ex rel. Neville v. Overby, 54 N.D. 295, 209 N.W. 552.

■ The appellant does not contend that the court lacked jurisdiction at the time set for the first hearing in this matter, on February 3, 1959. Personal service of the notice of hearing had been made upon the appellant and upon her former husband, and also upon her present husband. Both the former husband and her present husband defaulted, and are not involved in this appeal. Such personal service on all of the parties, however, clearly gave to the court jurisdiction in the matter. Ex parte Solberg, 52 N.D. 518, 203 N.W. 898.

The hearing of February 3 was continued to February 10 by the court. Under Section 27-16-19 of the North Dakota Century Code, the court is given the power to continue such hearings at any time. So the court had jurisdiction of the matter at the hearing held on February 10. At that hearing, the appellant appeared in person and with her attorney. The same was true of the continued hearings held on February 11 and February 16.

At the hearing of April 7, 1959, to which the matter was continued after the hearing

on February 16, the appellant again appeared in person but without her attorney. The court clearly had jurisdiction of the parties and of the subject matter at that hearing. At the hearing on April 7, with the appellant personally present, the court, in open court, again continued the hearing to August 19 at 10 a. m. This was done, as stated by the court, for the purpose of giving to the appellant an opportunity to provide a fit home for her children. After so ordering the hearing continued to August 19, the court said:

"If in the meantime before August 19 the Commissioner and the Public Welfare Board feel that the minor children involved are not being given proper care and attention and supervision including discipline if necessary then the matter can be brought up before me and the Court will set a hearing at a time earlier than August 19. That right is reserved at this time."

The record then discloses that, prior to August 19, the date to which the hearing had been continued, the minor children of the appellant were found in the house in which the family last resided and from which all furniture except one davenport had been sold and removed. The children were without any care or supervision, and were found eating out of cans which had been opened with beer-can openers. On this showing, the court advanced the matter for hearing from August 19 to July 2 at 10 a. m. The record discloses that notice of such hearing, so advanced to July 2, was attempted to be given to the appellant by mailing it to her at her last-known address. It was not received by her prior to the time of hearing.

█ Section 27–16–20 of the Century Code provides that any proceeding commenced before the juvenile court shall be deemed pending from the time the judge endorses his order for hearing until the judge shall order the matter closed. The court thus had jurisdiction over the children, and the court's order, making temporary provision for their care and custody, was within that jurisdiction.

█ Once the court acquires jurisdiction of a juvenile as a ward of the State, for the purposes of the juvenile law, the court acquires continuing jurisdiction over the person of such child. State v. Reister, N.D., 80 N.W.2d 114.

Section 27–16–35 of the Century Code provides that an order transferring permanent care, control, and custody of a child and terminating parental rights—

"* * * shall be made only after a special hearing before the court and the court shall cause notice of the time, place, and purpose of such hearing to be served within or without the state on the parents * * * and on the director of the division of child welfare of the public welfare board for at least ten days prior to the date of the hearing. When it appears to the satisfaction of the court that personal service cannot be obtained, then by publication thereof in a newspaper in the county once a week for three successive weeks prior to the date of the hearing."

█ Permanently depriving a mother of her parental rights is a serious matter, and the statute with reference to the giving of notice must be strictly complied with. The trial court did have jurisdiction to issue the temporary order pertaining to the custody and care of the children under Section 27–16–20 of the Century Code, which section provides for pendency of such proceedings from the time the judge endorses his order for hearing until he orders the hearing closed. No order closing the hearing having been made, the matter still was pending and before the court. In fact, the last order of the court specifically continued the hearing to August 19. So, when the children were found in an abandoned and neglected condition and without proper care, the court had jurisdiction to make a

further temporary order for their care but had no authority to terminate parental rights without further notice to the appellant. The order permanently terminating her parental rights following the hearing of July 2 was beyond the powers of the court, on the notice given.

The appellant assigns numerous other specifications of error in support of her motion to vacate the judgment. We find no merit in them, and therefore do not discuss them at length. The mere fact that the findings of the court do not use the exact language of the statute would not make the judgment invalid. If the language used embraces substantially the same meaning as the language of the statute, it is sufficient. The facts set forth in the record were ample to support an order terminating the parental rights of the appellant, had proper notice been given of the hearing at which such parental rights were terminated.

Since all of the proceedings in this matter, up to the hearing on July 2, 1959, were proper and in the exercise of the valid jurisdiction of the trial court, all orders of the court in the matter, prior to July 2, 1959, are valid. The order denying the motion to vacate the judgment terminating parental rights of the appellant is reversed, and the matter is remanded to the district court with instructions to set a new date for hearing the question of termination of parental rights of the appellant, and for the consideration of such other matters pertaining to the care, custody, and control of the minor children as may then come before the court.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.