## STATE EX REL. LLOYD LAVERNE KNUTSON v. CARL JACKSON.

82 N. W. (2d) 234.

March 15, 1957—No. 36,928.

*Cann & Schmidt,* for appellant.

*Miles Lord,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent as superintendent of the St. Cloud Reformatory.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court discharging a writ of habeas corpus and from a judgment entered pursuant to such order.

This case arises out of the imprisonment of the appellant, Lloyd Laverne Knutson, after he had pleaded guilty of the crime of murder in the second degree. The records indicate that on April 4, 1952, John J. Cahill, the sheriff of Beltrami County, petitioned the juvenile court of that county to inquire into the delinquency condition of appellant, pursuant to M. S. A. c. 260, and that the delinquency condition be further dealt with in accordance with the law. Subsequent to this petition, the juvenile court ordered the prosecution of the delinquent. A copy of this order, according to the minutes of the juvenile court, was filed in district court and a copy given to the county attorney. Thereafter he was proceeded against in the district court in the same manner as anyone having been charged with the crime of murder, and was represented by a court-appointed counsel.

On April 22, 1952, after having pleaded guilty, appellant was sentenced to Stillwater prison for the rest of his natural life, and he was later transferred to the state reformatory for men where he is still confined. On June 10, 1955, appellant petitioned the district court for a writ of habeas corpus, and a hearing on that petition was held in July of that year. At the conclusion of the hearing the district court discharged the writ of habeas corpus and remanded appel-

lant to the custody of the superintendent of the state reformatory.

It is from that order and the judgment pursuant to that order that appellant is now appealing to this court. He contends that the district court was without jurisdiction to proceed against him because the proceedings held by the juvenile court were defective and thus that court was without jurisdiction. Two issues are now raised in this court:

(1) Whether the district court had jurisdiction to proceed against appellant in the absence of a valid proceeding before the juvenile court, and (2) whether the proceedings held in this case before the juvenile court were so defective as to nullify that court's order for prosecution.

■  The pertinent act we are dealing with here is M. S. A. c. 260. Section 260.01 defines a delinquent child as "a child who violates any law of this state or any city or village ordinance; * * *." Section 260.07 allows, among other persons, "Any reputable person" to file with the juvenile court a petition "setting forth the facts of the alleged * * * delinquency." Section 260.08 provides among other things that when the petition is presented it shall be filed and a date set for a hearing thereon. It further provides, *The parents of the child, if living, and their residence is known, * * * shall be notified of the proceedings.*" (Italics supplied.) It also provides, "The child shall have the right to appear and be represented by counsel and, if unable to provide counsel, the court may appoint counsel for him." Sections 260.13, 260.14, 260.15, and 260.21 relate to the disposition that may be made by the juvenile court if it finds that the child is delinquent.

In the case at bar we are concerned with the disposition which may be made under § 260.21, which reads as follows:

"The adjudication of a juvenile court that a child is delinquent shall in no case be deemed a conviction of crime; but the court may in its discretion cause any alleged delinquent child of the age of 12 years or over to be proceeded against in accordance with the laws that may be in force governing the commission of and punishment

for crimes and misdemeanors, or for the violation of municipal ordinances, by an order directing the county attorney to institute such prosecution as may be appropriate."

It has been stated that the juvenile court laws of this country are the most outstanding improvement in the administration of criminal justice since the Magna Charta was signed. While it may be noted that the courts vary in form and structure throughout the states, there is general agreement on certain principles on which the juvenile court operates, such as the principle that children are not to be dealt with as criminals but as individuals in whose future welfare the community is concerned. The purpose of the court proceedings is to help the child, not to punish him. See, Winnet, *Fifty Years of the Juvenile Court: An Evaluation,* 36 A.B.A.J. 363. The whole tenor of the Juvenile Court Act indicates that the sole purpose is the welfare of the delinquent as well as the dependent or neglected child. The principle is now firmly established that for its protection and for the good of the child the state may, through its courts, place the child in charge of some person or institution for proper training and support. Peterson v. McAuliffe, 151 Minn. 467, 187 N. W. 226. The act itself, in § 260.33, states that there is due from the state to the child concerned the protection and correction which he needs under the circumstances disclosed in the case.

It thus becomes evident that the state legislature has adopted a policy of dealing with delinquent children to the end that under the provisions of the act such children may yet be rehabilitated and become good members of society. However, it is now contended that it is not necessary for a proceeding to take place under c. 260 before a child may be dealt with by the district court. We do not see how the clear purpose of the act may be achieved if it is not mandatory that the proceeding set forth in c. 260 take place before a delinquent child may be prosecuted in the district court. There is further indication of the legislature's intent in this regard in § 260.22, subd. 1, which provides in part:

"When any minor is arraigned upon a criminal charge before a judge of the municipal court or justice of the peace otherwise than

upon an order transferring the case from a juvenile court * * * the case shall forthwith be transferred to the juvenile court of the county."

The attorney general in construing this section of the statute used language which we feel to be particularly appropriate to the case at bar when he said in Opinion Attorney General, No. 268-F, October 30, 1946:

"* * * it was the intention of the Juvenile Court Act that boys and girls under 18 should be dealt with in the juvenile court instead of by prosecution, * * *. It was the intention of that act that such boys and girls should not be dealt with as other common criminals. There is no difference in the result so far as the boy or girl is concerned whether he be prosecuted under the statute or under the ordinance; the penalty for the violation of either is the same.

"It is to prevent the imposing of such penalties upon a boy or girl under 18 that the statute was passed. It would make no difference so far as the result to the boy or girl is concerned whether the prosecution were under the ordinance or under the statute. * * * It was the penalizing of such minors in a criminal way which the statute seeks to avoid."

It is therefore our opinion that the intent of the legislature was clearly to require proceedings under the Juvenile Court Act prior to a proceeding in the district court.

However, we are still confronted with the issue of whether or not the legislature could constitutionally require such proceedings. Minn. Const. art. 6, § 5, places the original jurisdiction of all criminal matters in the district court of this state where the punishment shall exceed 3-months imprisonment or a fine of more than $100. In our opinion the Juvenile Court Act does not deprive the district court of its criminal jurisdiction. The procedures required are those which must be followed before criminal jurisdiction comes into being. As noted above, § 260.21 states that an adjudication of a juvenile court that a child is delinquent shall in no case be deemed a conviction of crime. In Peterson v. McAuliffe, *supra*, it was contended that the

act was unconstitutional as applied to delinquent children on the grounds that when children commit crime the state cannot lay hold of them except by due process of law. In that case the court decided that the act was not unconstitutional in this respect and rejected the contrary view expressed in People ex rel. O'Connell v. Turner, 55 Ill. 280, 8 Am. R. 645, and further held that the delinquency charge is not intended as a proceeding to punish for a crime.[1]

It is therefore our opinion that there is no conflict with the Minnesota constitution in requiring that a proper proceeding must be held under c. 260 prior to the district court's exercise of its criminal jurisdiction in these matters.

■ With respect to the second issue, § 260.08 contains the following language:

"Upon the presentation of the petition if it appears that a child may be dependent, neglected, or delinquent and that it is for the best interest of the child that the matter be heard in said county, the petition shall be filed and a date set for hearing thereon. * * * *The parents of the child, if living, and their residence is known, * * * shall be notified of the proceedings.*" (Italics supplied.)

The record indicates that appellant was taken into custody on April 2, 1952, and released, and was again taken into custody on April 3, 1952. During that day and on the following day he was interrogated by officers, and on April 5, 1952, at 10:45 a. m. a petition dated April 4, 1952, was presented to the juvenile court.

Up to this time appellant had not seen his mother or any friend or relative, nor was he given an opportunity to be represented by counsel. The petition alleges that appellant was 16 years old, that he had killed his father on April 2, 1952, and that his mother's residence was Blackduck, Minnesota. The minutes of the juvenile court indicate that a hearing was held at 10:45 a. m. on April 5, 1952. The minutes also indicate that the county attorney, the sheriff, and appellant were present. At the conclusion of the hearing, as noted above,

---

[1]For an extensive review of the varying statutes and conflicting views throughout the country, see Annotations, 48 A. L. R. (2d) 663 and 78 A. L. R. 317. See, also, 31 Am. Jur., Juvenile Courts and Offenders, § 26.

the court issued an order that appellant was a delinquent child; that he had committed the offense of murder; and that the county attorney was directed to institute such prosecution of appellant as may be appropriate for the offense.

*No notice of this hearing was given to appellant's mother.* However, on the afternoon of April 5, 1952, and after the order for prosecution had been issued by the juvenile court, the county attorney asked appellant's mother to come to Bemidji. This was apparently done for the purpose of having her sign a waiver of notice of hearing, as there appears in the record a waiver signed by Stella Knutson, which contains the following language:

"I, Stella Knutson, the natural mother of Lloyd Laverne Knutson having been advised of my rights to be present at a hearing in Juvenile Court in connection with the delinquency of my minor son, Lloyd Laverne Knutson, hereby waive notice of the hearing on said delinquency and state that I do not care to be present at said hearing.

"I further waive the right of my said son to have an attorney represent him at said hearing in connection with the delinquency charge."

It is clear that under § 260.08, as cited above, notice to the child's parents is mandatory as the words "shall be notified" are used. The record discloses that the petition filed with the juvenile court in this case gave the mother's residence and therefore it cannot be said that her residence was not known. In our opinion the requirement of notice is jurisdictional. It must be noted in Peterson v. McAuliffe, *supra,* that one of the principles relied upon by the court in upholding the constitutionality of the act was that notice was required.

Basically a waiver is a voluntary relinquishment of a known right which must be based on full knowledge of the facts. 20 Dunnell, Dig. (3 ed.) § 10134. The evidence in the instant case indicates that Mrs. Knutson did not understand what she was signing and that the waiver here was not based on a full knowledge of the facts. On the other hand there is absolutely no evidence in the record to rebut this. Under the facts and circumstances of this case it would hardly seem consistent with principles of due process to hold that requirements of notice had been met.

It might be argued that there was such a technical waiver of notice on the part of the mother as to justify our affirming the proceeding in connection with the morning hearing in the juvenile court. However, here we have a situation where the juvenile was charged with the crime of murdering his father, which resulted in his being sentenced to life imprisonment in a penal institution. It is our opinion he was entitled to all of his legal rights, and therefore we cannot lightly pass over the so-called waiver of a notice required by the statute. We therefore cannot hold that in this case there was an effective waiver of the requirements to notice under § 260.08.

This opinion is not to be construed as barring any further action against the accused on any plea or theory of former jeopardy. It appears basic in the law that the effect upon a claim or plea of former jeopardy of a discharge on habeas corpus after a conviction depends upon the ground of the discharge. If the discharge is upon the ground that the court trying the accused lacked jurisdiction, then the accused may be subsequently tried before a court of competent jurisdiction and on a valid charge. It has generally been held that the resentencing of a prisoner who has been discharged on habeas corpus from confinement under an illegal sentence is not objectionable as putting him twice in jeopardy. 15 Am. Jur., Criminal Law, § 364, and citations thereunder.

Reversed.