STATE of North Dakota, Plaintiff
and Appellee,

v.

Timothy GRENZ, Defendant
and Appellant.

Cr. No. 535.

Supreme Court of North Dakota.

June 23, 1976.

Charles J. Gilje, State's Atty., Jamestown, for plaintiff and appellee State of North Dakota.

Burt L. Riskedahl, Bismarck, for defendant and appellant.

VOGEL, Justice.

This appeal is from an order of the district court of Stutsman County on October 8, 1974, denying the defendant Timothy Grenz's petition for relief under the Uniform Post-Conviction Procedure Act, Chapter 29–32, N.D.C.C. The defendant is attacking his conviction and sentence in dis-

trict court for first-degree robbery obtained upon a plea of guilty on October 24, 1974.

The defendant contends that the district court's order of October 8, 1974, denying post-conviction relief should be reversed because the trial court was without jurisdiction to impose the sentence due to constitutional and statutory violations that occurred in the defendant's transfer hearing in juvenile court. He claims that the waiver hearing was ineffectual to transfer jurisdiction from juvenile court to adult court and that all subsequent criminal proceedings in the district court are null and void for lack of jurisdiction over the person of Timothy Grenz or the subject matter of the case. We agree that the notice to the juvenile defendant and to his parents was too short, that his right to an attorney in juvenile court was not knowingly and understandingly waived, and that the adult court therefore lacked jurisdiction over the offense and the person.

The factual background of this case is not in dispute. At the time of his arrest in Jamestown, North Dakota, on February 23, 1974, the defendant was seventeen years old, a "child," within the definition of the Juvenile Court Act in North Dakota, Chapter 27–20, N.D.C.C. [the Uniform Juvenile Court Act]. At the time of the defendant's arrest, Section 27–20–02, subsection 1, N.D. C.C., defined "child" as "an individual who is:[1]

"a.  Under the age of eighteen years, and not married or not a member of the armed services;

"b.  Over the age of eighteen years who committed an act of delinquency while a child."

Following his arrest the defendant was held in custody in Stutsman County jail. On February 26, 1974, a juvenile court waiver hearing was scheduled for the following day.

The defendant and his mother received notice of the hearing the day before. The defendant's father was not served in advance with notice of the hearing.[2] Three days' notice is required by our transfer statute, Section 27–20–34, subsection 1–c. The defendant's mother was present at the hearing but did not actively participate in the proceedings. The defendant was not represented by counsel.

The waiver hearing consisted of:

1.  Oral testimony by the juvenile supervisor concerning the defendant's juvenile record.

2.  Oral testimony by a representative of the State Youth Authority concerning the defendant's placement within that agency and various efforts made to rehabilitate him, including the statement that the defendant was not amenable to rehabilitation in the juvenile facilities or committable to an institution for the mentally ill.

---

1.  This definition has subsequently been amended to read:
    "a.  Under the age of eighteen years and is neither married and cohabiting with spouse nor in the military service of the United States; or
    "b.  Under the age of twenty years with respect to a delinquent act committed while under the age of eighteen years." [N.D.C.C. § 27–20–02, subsec. 1; S.L. 1975, Ch. 280, § 1.]

2.  It appears from the record that the father had heard of the hearing indirectly because he walked into the courtroom while the hearing was in progress. At that time the sheriff served the father with "some papers" and the court made the following inquiry:
    "THE COURT: The record will show Mr. Grenz is present.
    "Mr. Grenz, the purpose of this hearing is to determine whether we should retain Tim

in Juvenile Court or waive him into adult court to be proceeded against as an adult. "You understand that?
    "MR. OHMAR GRENZ: Yes.
    "(Deputy Sheriff Stickel served some papers on Mr. Ohmar Grenz.)
    "THE COURT: I have already asked Tim and Mrs. Grenz whether they had anything to say with respect to this and they indicated they didn't. Do you have anything that you wish to say as to why this should or should not be done?
    "MR. OHMAR GRENZ: I don't know what to say."
    This interchange is the extent of the father's participation in the waiver hearing with the exception of a summary "yes" when asked whether he agreed with the final disposition of the case.

3. Oral testimony by a police officer that probable cause existed for him to believe that the defendant may have committed a delinquent act.

4. Inquiry by the court whether there was any reason that the defendant should be handled within the juvenile court facilities, to which the defendant replied, "No." The same question was asked of both parents. Both agreed with the judge that juvenile court facilities had not "worked out." [3]

## ISSUES

■ The first issue on appeal is whether the defendant's plea of guilty in adult criminal court to the charge of robbery in the first degree waives his right to collaterally attack any defects in the transfer proceedings in juvenile court.

There is a line of authority in Federal courts which holds that a plea of guilty, entered after adequate legal advice, is deemed a waiver of any infirmity in the transfer hearing. See *Smith v. Yeager,* 459 F.2d 124, 126–127 (3d Cir. 1972); *Wilhite v. United States,* 108 U.S.App.D.C. 279, 281 F.2d 642, 644 (1960). However, the generally accepted rule is that a voluntarily entered plea of guilty constitutes a waiver of only nonjurisdictional defects. *Muse v. Slayton,* 333 F.Supp. 1007, 1010 (D.W.Va. 1971); *White v. Pepersack,* 352 F.2d 470 (4th Cir. 1965). Since in this case all of the defendant's claims arise from alleged irregularities in the waiver-of-jurisdiction procedure in the juvenile court, his claims attack jurisdiction and they are not waived. *Ex parte Rixen,* 74 N.D. 80, 19 N.W.2d 863 (1945); *In re Kennedy,* 110 N.W.2d 365 (N.D.1961); *State v. Jackson,* 249 Minn. 246, 82 N.W.2d 234 (1957).

In this case, the defendant is not asserting his innocence or a coerced guilty plea. The error he is challenging did not involve any element of trial in the adult court. By his plea of guilty in adult court the defendant relinquished the right to trial but did not, impliedly or otherwise, waive his right to an appropriate hearing in juvenile court. See *State v. Jackson, supra.*

The second issue in this case is whether the waiver-of-juvenile-jurisdiction hearing was sufficient under North Dakota statutes or under the Federal Constitution to transfer jurisdiction to the district court. Since the North Dakota statute setting forth requirements for a valid transfer of jurisdiction was not complied with in this case, it is not necessary to reach the constitutional question involved.

The defendant claims that the hearing failed to comply with the statutory requirements concerning transfer of jurisdiction in two respects: First, notice of the time, place, and purpose of the hearing was not given to the defendant and his parents at least three days before the hearing. Second, the provisions of Section 27–20–26, which are incorporated into Section 27–20–34, requiring the court to ascertain whether a party who appears without counsel knows of his right to counsel and of his right to have a court-appointed counsel if he is a needy person, were not followed.

## THE NOTICE REQUIREMENT

It is apparent from the transcript of the juvenile court waiver hearing that the required three-day notice was not given to the defendant or his parents. The State concedes that the defendant and his mother

---

**3.** "THE COURT: Well, Tim, again I ask you, do you think there is any reason why you should be handled under Juvenile Court facilities?

"TIMOTHY GRENZ: No.

"THE COURT: Mrs. Grenz, do you think there is?

"MRS. GRENZ: I don't because anything—

"THE COURT: It hasn't worked out, has it?

"MRS. GRENZ: No, and it has been pretty bad for him in some ways.

"THE COURT: Mr. Grenz, do you agree on that?

"MR. OHMAR GRENZ: Yes.

"THE COURT: All right then, the Court will make an Order waiving juvenile court jurisdiction and he will be held to answer in adult court."

were informed that a hearing was scheduled for the following day and that the defendant's father received no written notice prior to the hearing.

■ The State makes the argument that the defective notice was not material in light of the subsequent developments in the case. The State contends that since the defendant had the benefit of court-appointed counsel after he was waived into adult court, counsel had the opportunity to appeal from the defective waiver hearing but made a tactical decision not to do so. The State is arguing essentially that the failure of the defendant to attack the defective notice in juvenile court before he pled guilty in district court to the charge of robbery operated as a waiver of his right to attack the improper notice at any time thereafter. We have already held that jurisdictional claims are not waived by a plea of guilty. We hold that the failure of the State to comply with the statutory notice requirements set forth in Section 27–20–34 constituted a material defect in the waiver-of-jurisdiction proceedings. Since the defective-notice claim goes to the matter of jurisdiction, notice was not waived. Mere presence of the parents at the hearing is not a waiver of notice. *In re Roth,* 158 Neb. 789, 64 N.W.2d 799 (1954).

The failure of the State to provide adequate notice to the juvenile and his parents was material not only because of the explicit notice requirement in the statute but because due process of law requires notice to be given "sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded." *In re Gault,* 387 U.S. 1, 31–57, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967); *McGuire v. Warden,* 229 N.W.2d 211 (N.D.1975).

## THE RIGHT TO COUNSEL

■ Timothy Grenz appeared at the waiver-of-jurisdiction hearing without counsel. The court made the following observation near the beginning of the brief hearing:

"The defendant and his mother are here, and the papers which were delivered to them advise them as to the right of counsel and they are here in court without counsel.

"Do you have any questions, Tim, or Mrs. Grenz, about this? The only thing that we have to determine here is, in the first place, we know that Tim has been under the jurisdiction of Juvenile Court and that he has been dismissed from that jurisdiction. We also know that he is 17 years of age, and that it is a matter of record in this Court that we haven't been able to do anything with respect to Tim or accomplish anything, and if you have some reason to present to the Court why Juvenile Court jurisdiction should not be waived, I would like to hear it.

"Tim?

"TIMOTHY GRENZ: I don't have nothing to say."

This quoted discussion is the only reference at the waiver-of-jurisdiction hearing to the defendant's right to counsel. The "papers" referred to by the court that were purportedly delivered to the defendant and his mother included the following information:

### "RIGHT TO COUNSEL

"You, and each of you, are further informed that while you are not required to be represented by legal counsel in this proceeding, you are entitled to legal counsel if you so desire. If you desire legal counsel and are unable due to financial hardship to employ counsel, the Court, upon your request, will appoint legal counsel for you."

Since Section 27–20–34 incorporates Section 27–20–26, it was incumbent on the court to inquire further, under the circumstances in this case, as to whether Timothy Grenz knew of his right to counsel. Section 27–20–26 not only requires appointment of counsel if a needy party requests an attorney but specifically states:

"Counsel *must* be provided for a child not represented by his parent, guardian, or custodian." [Emphasis added.]

At the hearing in the district court on application for post-conviction relief, the

State argued that the right-to-counsel requirement was fulfilled in this case because the defendant was represented by his parents. This argument is without merit. The record is clear that neither parent took an active role in the hearing. It would be unfair to the defendant and unrealistic to say that their mere presence at the hearing is deemed to be representation of the interests of the defendant. See *In re Roth, supra.* It is apparent from the record that neither parent understood that it was his or her role to advise or represent the son on the issue of transfer of juvenile jurisdiction. Neither parent communicated with the defendant from the time of his arrest to the time of the hearing.

By adopting the Uniform Juvenile Court Act provision entitling a juvenile to representation by legal counsel at all stages of the proceedings, it is apparent that the Legislature recognized the necessity for an advocate on behalf of the child to be present to protect the interests of the child in the often-adversary setting of juvenile court proceedings. Sec. 27–20–26, N.D.C.C. In *Kent v. United States,* 383 U.S. 541, 556, 86 S.Ct. 1045, 1055, 16 L.Ed.2d 84 (1966), the United States Supreme Court stated:

> "It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile."

The Court in *Kent* held:

> " . . . we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." 383 U.S. 541, at 557, 86 S.Ct. 1045, at 1055.

The *Kent* court follows the decision of the Court of Appeals for the District of Columbia in *Black v. United States,* 122 U.S.App.D.C. 393, 355 F.2d 104 (1965), holding that

> " . . . assistance of counsel in the 'critically important' determination of waiver is essential to the proper administration of juvenile proceedings. Because the juvenile was not advised of his right to retained or appointed counsel, the judgment of the District Court, following waiver of jurisdiction by the Juvenile Court, was reversed." *Kent v. United States,* 383 U.S. 541, at 558, 86 S.Ct. 1045, at 1056, 16 L.Ed.2d 84.

In this appeal, the State argues that the waiver determination would have been the same whether or not defendant was represented by counsel. In the district court hearing on application for post-conviction relief, the court stated:

> "The parents were there. They did not object. This is not the case where the defendant came in and admitted all types of things where counsel would have advised him not to. Again I say there is no showing that if there was an attorney, [the juvenile court] would have acted any differently."

The role of counsel at juvenile transfer-of-jurisdiction hearings has recently received much attention in judicial opinions and law reviews. See, e. g., *Kent v. United States, supra; Haziel v. United States,* 131 U.S.App.D.C. 298, 404 F.2d 1275 (1968); Stamm, *Transfer of Jurisdiction in Juvenile Court: An Analysis of the Proceeding, Its Role in the Administration of Justice, and a Proposal for the Reform of Kentucky Law,* 62 Ky.L.J. 122 (1973); Gardner, *The Kent Case and the Juvenile Court: A Challenge to Lawyers,* 52 A.B.A.J. 923 (1966).

To contend after the event that the result in this case would have been the same if the child had been represented by counsel at the waiver hearing is not a sound argument for denying post-conviction relief. Counsel for the child may be necessary to assist in making an informed decision whether to agree to the transfer of jurisdiction, to cross-examine witnesses effectively, and to guard against actions of the juvenile court beyond its discretionary authority. See

*Watkins v. United States,* 119 U.S.App.D.C. 409, 343 F.2d 278 (1964).

The juvenile court in this case relied solely on the testimony of an agent of the State Youth Authority to the effect that Timothy Grenz was not amenable to treatment as a juvenile and was not committable to an institution for the mentally retarded or mentally ill. The juvenile court must make specific findings on these issues before waiver may be considered under the transfer statute, Section 27–20–34, subsection 1–d.

If the defendant had been provided with counsel, it is conceivable that cross-examination of the State Youth Authority witness could have revealed alternative solutions to Timothy Grenz's problems, other than waiver to adult criminal court. Trade school, for one example, may have been an alternative in this case. The Court of Appeals in *Haziel v. United States, supra,* placed a heavy burden on the child's advocate and on the juvenile court to

" . . . explore all the possible dispositions short of waiver by which the 'welfare of the child' . . . may be secured. Both counsel and the court have a vital role to play in this exploration. The child's advocate should search for a plan, or perhaps a range of plans, which may persuade the court that the welfare of the child and the safety of the community can be served without waiver." 404 F.2d 1275, at 1279.

Commitment for treatment is another alternative to waiver which counsel for the defendant might have explored, since there has been some mention in this case that the defendant may have been mentally disturbed. See Note, *Waiver of Juvenile Jurisdiction and the Hard-core Youth,* 51 N.D. L.Rev. 655, p. 668–674 (1975).

In this case, the defendant made no attempt to represent himself, nor did his parents attempt to represent his interests. We hold that the defendant had a right to representation by counsel, and that the court had the statutory duty to ascertain whether he knew of his right, on the record,

when he appeared without counsel. We agree with the Supreme Court in *Kent* in its description of the role of counsel at a juvenile waiver hearing:

"The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is of the essence of justice." 383 U.S. 541, at 561, 86 S.Ct. 1045, at 1057.

## CONCLUSION

■ The North Dakota transfer-of-jurisdiction statute provides for the constitutional requirement of fundamental fairness set forth in *Kent:* a full hearing on whether transfer should be made, written notice, right to counsel at all stages of the proceedings, guidelines for the court to follow in making findings, and other basic rights. Note, *Waiver of Juvenile Jurisdiction and the Hard-core Youth,* 51 N.D.L.Rev. 655 (1975), *supra,* fn. 101 at 668–669.

A determination of the transfer-of-jurisdiction issue must take place before an individual may be prosecuted for any offense committed before the age of eighteen. Secs. 27–20–02, subsec. 1–b, and 27–20–34, subsec. 3. Jurisdiction must be properly transferred by a juvenile court following the statutory requirements of Section 27–20–34 before the adult criminal court may assume jurisdiction over the subject matter of the case or the person of the juvenile. Sec. 27–20–34, subsec. 3.

■ Due to the failure of the juvenile court to provide adequate notice of the hearing to the defendant and his parents and the failure of the court to ascertain whether the defendant knew of his right to counsel, the proceedings were statutorily insufficient to transfer jurisdiction from juvenile to district court. The subsequent conviction in district court upon a plea of guilty is void for lack of jurisdiction.

It is ordered that this case be remanded to the district court with instructions that the district court remand the record in this case to the juvenile court for proceedings not inconsistent with this opinion. Custody

is transferred to the juvenile court of Stutsman County.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.