431 N.W.2d 272 (1988)
In the Interest of J.D.Z., a Child.
Arnie RUMMEL, Petitioner and Appellant,
v.
J.D.Z., a child, and K.P., his mother, Respondents and Appellees.
Civ. No. 880031.
Supreme Court of North Dakota.
November 8, 1988.
James Allen Hope (argued), Asst. States Atty., Dickinson, for petitioner and appellant.
Freed, Dynes, Reichert & Buresh, PC, Dickinson, for respondents and appellees; argued by Ronald A. Reichert.
ERICKSTAD, Chief Justice.
At a hearing before the juvenile court concerning a petition to declare J.D.Z. (hereinafter Joe, a pseudonym) to be a delinquent child, the court suppressed the confession of the minor child finding it was obtained in violation of his statutory and constitutional rights. The court ordered the petition to be dismissed and this appeal followed. We affirm.
A drilling rig truck and a Ditch Witch trencher belonging to American State Bank of Dickinson and stored near the Plaza Del Toro building in Dickinson were vandalized on or about May 31, 1987. Damage to each vehicle was in excess of $2,000. An officer *273 of American State Bank discovered the damaged vehicles and notified the officer in charge of those particular vehicles who then called the Dickinson police.
The Dickinson police began an investigation of the scene. A Crimestopper call was received which identified a possible suspect and also a potential witness, Joe. This information was relayed to Arnie Rummel, a Police Youth Bureau officer, who decided to talk with Joe, a minor child, about the incident.
Rummel went to the home of Joe, his mother, K.P. (hereinafter Karen, a pseudonym), and his stepfather, B.P. (hereinafter Bob, a pseudonym). All four sat down in the living room and Rummel began to question Joe. After a few initial questions, Rummel got the impression that Joe was not telling the truth and told him so.[1] Bob, the stepfather, also told Joe that he, too, knew Joe was not telling the truth. Rummel informed Joe that he was not under arrest and did not have to answer any questions. At that point Bob began asking Joe about the incident, stating that the questions would be answered and Joe would tell the truth because Bob wanted to get to the bottom of this.[2] It is at this *274 point that Joe confessed to having engaged in the vandalism of the vehicles together with another minor child.
A juvenile petition was later filed alleging Joe to be a delinquent child. A hearing was held on the petition during which Joe moved to have the confession suppressed and, barring that, to have the petition dismissed for lack of corroborative evidence.
The district court suppressed the confession and found there was insufficient corroborating evidence to support the confession. The court said:
"The uncontroverted facts herein establish that the Respondent [Joe] had become the focus of the police investigation of the property damage crime. The Petitioner [Rummel] went to [Joe's] home for the express purpose of questioning [Joe] about the crime and [Joe's] involvement therein. Upon arrival, [Rummel] informed [Joe], a ten year old child, that [Joe] need not answer the [Rummel's] questions, but made no effort to ascertain [Joe's] comprehension of such advisement, failed to inform [Joe] of his constitutional and statutory rights pursuant to Miranda v. Arizona, 384 U.S. 436, [86 S.Ct. 1602, 16 L.Ed.2d 694,] and further failed to inform [Joe's] parents of the applicable rights.
"It is further clear that when [Rummel] received [Joe's] initial answer to [Rummel's] questions, [Rummel], from prior experience with [Joe], considered [Joe's] answers to be less than truthful, and in fact so stated. The questioning that continued, while propounded by the step father of [Joe], was accomplished in the presence of and for the purpose of furnishing information to [Rummel] concerning [Joe's] involvement in the alleged criminal activity.
"It is therefore the decision of this Court that the motion of [Joe] to suppress the confession of [Joe] as secured by [Rummel] is meritorious, that the confession was secured illegally in that [Rummel] failed to advise the minor child of his statutory and constitutional rights, failed to advise the parent of the minor child of the applicable statutory and constitutional rights, and that the interrogation that did occur was custodial in that the same occurred in the residence of the minor child and with the obvious presence of law enforcement authorities.
"It is therefore the determination of this Court that the motion of [Joe] to suppress the confession of [Joe] is timely and appropriately made, and that the same is herewith granted in its entirety." [Material in brackets added to clarify.]
In appealing from the Order Dismissing the Petition Rummel asserts that the juvenile court erred in suppressing Joe's confession and in finding that Rummel failed to corroborate that confession. Without responding to these assertions, Joe's counsel contends that the Double Jeopardy Clause of the North Dakota and United States Constitutions protects Joe from a rehearing.
The dispositive issue is whether or not Joe was denied the statutory right to counsel guaranteed by section 27-20-26, N.D.C.C. For if he was, it is immaterial whether or not he was denied a constitutional right. We find that Joe was denied this right and therefore the confession was properly suppressed.
This Court's scope of review under the Uniform Juvenile Court Act, pursuant to section 27-20-56, N.D.C.C., is equivalent to the former procedure of trial de novo. McGurren v. S.T., 241 N.W.2d 690 (N.D.1976). This Court will independently review the evidence presented to the juvenile court at the hearing on the motion to suppress. In Interest of K.B., 244 N.W.2d 297 (N.D.1976). Although the juvenile court's findings of fact are entitled to appreciable weight, this Court is not bound by those findings. In Interest of R.W.B., 241 N.W.2d 546 (N.D.1976).
*275 Section 27-20-26(1), N.D.C.C., provides a right to counsel under the Uniform Juvenile Court Act, and states in relevant part:
"[A] party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and, if as a needy person he is unable to employ counsel, to have the court provide counsel for him. ... Counsel must be provided for a child not represented by his parent, guardian, or custodian."
We have recognized that the "stages of any proceedings" are not limited to those instances which take place in the courtroom but include circumstances in which an officer has focused his investigation on a particular suspect and is intent on gathering evidence, not merely investigating a complaint. In In re J.Z., 190 N.W.2d 27 (N.D.1971), a petition was filed alleging J.Z. to be a deprived child as a result of paternal abuse, in particular, severe injuries resulting from a broken toy telephone jammed down the five-month-old baby's throat. A juvenile supervisor met with the parents concerning termination of parental rights. We said:
"He was not simply screening a complaint to determine if there was jurisdiction or if there was no evidence substantiating the complaint. Rather, he was functioning as a law enforcement officer gathering evidence, on the one hand, and, on the other, determining whether there would be court proceedings to terminate parental rights. At the outset of the initial interview which was a critical stage in these proceedings [cite omitted], the parents, although not entitled to informal adjustment, should have been advised of their right to counsel and should have been afforded the opportunity of consulting a lawyer before proceeding with the initial interview. N.D.C.C. Sec. 27-20-26." [Footnote omitted.] Id. at 32.
In In Interest of R.W.B., supra, 241 N.W.2d 546, an anonymous report was received by the Grand Forks County Social Service Center that R.W.B. was not being properly cared for by his parents. As a part of its investigation, the parents were interviewed by a representative of the agency which initiated the petition seeking termination of their parental rights. Questions were asked which were designed to elicit evidence of child abuse. Relying on In re J.Z., supra, we held that the parents "were entitled to be advised of their right to counsel pursuant to § 27-20-26(1), N.D.C.C., because the investigation being conducted by [the representative] had focused upon them."[3]Id. at 556.
In the instant case, the initial questions by Rummel to Joe about his knowledge of the incident may not constitute a stage of the proceedings. However, once Rummel became aware that Joe may have been personally involved in the vandalism, his line of questioning, and the investigation, focused on Joe. This focus, and the questions designed to elicit evidence of vandalism, caused the interview to become a "stage" of the "proceedings."[4] Before being asked any more questions, Joe was entitled to be advised of his right to counsel under section 27-20-26, N.D.C.C. Rummel merely told Joe that he was not under arrest and that he did not have to answer any questions. No mention was made of his right to counsel.
Section 27-20-26, N.D.C.C., not only provides that a party is entitled to representation *276 but specifically states: "Counsel must be provided for a child not represented by his parent, guardian, or custodian." [Emphasis added.] We have held that the mere presence of a parent does not constitute representation. In State v. Grenz, 243 N.W.2d 375 (N.D.1976), a seventeen-year-old was charged with first degree robbery. The minor child's parents were present at the waiver-of-jurisdiction hearing, but "[t]he record is clear that neither parent took an active role in the hearing. It would be unfair to the defendant and unrealistic to say that their mere presence at the hearing is deemed to be representation of the interests of the defendant." [Citation omitted.] Id. at 380.
While Joe's mother, Karen, and his mother's husband, Bob, were present during the questioning, we cannot say from the tenor of Bob's questions that he was representing Joe.[5] We conclude that, under these particular circumstances, the mere presence of the parents during questioning by a police officer concerning an incident of vandalism in which their child is a suspect does not constitute representation of the interests of that minor child as contemplated by section 27-20-26, N.D.C.C.
In In Interest of D.S., 263 N.W.2d 114 (N.D.1978), a petition was filed charging D.S., a fifteen-year-old, with the delinquent act of criminal mischief for causing damage to the walls of his home. While in juvenile detention, D.S. was interrogated about, and eventually confessed to, the murder of his girlfriend. D.S. was found guilty of the murder, and on appeal asserted that his confession was obtained in violation of his right to counsel under subsection 1 of section 27-20-26, N.D.C.C. We concluded:
"upon a careful examination of § 27-20-26, N.C.C.C., that this section imposes a mandatory duty to provide counsel for a child at all stages of the proceedings under the Uniform Juvenile Court Act providing the child is not represented by his parent, guardian, or custodian. [footnote omitted] Furthermore, we conclude that this right to counsel cannot be waived by a child who is not represented by his parent, guardian, or custodian. [citation omitted] Any other interpretation would be contrary to the clear and unambiguous language of § 27-20-26, N.D.C.C. [footnote omitted]." Id. at 120-121.
In light of the statutory guarantee of right to counsel provided by the Uniform Juvenile Court Act and our past decisions applying this guarantee, we conclude that Joe had the right to be represented when the investigation of Rummel began to focus on him. Here the mere presence of his mother and stepfather did not guarantee the representation intended by the Legislature. The State therefore had a mandatory duty to provide Joe with counsel before proceeding with further questioning. Because Joe was not represented when he confessed to involvement in the vandalism, that confession was obtained in violation of his statutory rights. The confession was properly suppressed by the juvenile court. We affirm.
GIERKE and LEVINE, JJ., concur.
VANDE WALLE and MESCHKE, JJ., concur in the result.
NOTES
[1] Hearing transcript at page 59:

"Q When you first told [Joe] what you were there for, what did you tell him?
"A I told him it was about the Plaza Del Toro and he said he knew. He understood what we were going to be talking about.
"Q Okay, then did you ask him? What did you ask him after that?
"A I asked him who was the person he had seen doing the vandalism.
"Q What did he tell you?
"A He stated his name was [C.L.]
"Q And then what did [Joe] tell you?
"A I then asked [Joe] what did you see [C.L.] doing and he stated that he had seen [C.L.] inside of the truck breaking gauges. He seen him put his feet up on the window and kick the window and break it in. He couldn't say that he put grease on things and things like that.
* * * * * *
"MR HOPE: What did you do at that point?
"A I got to confess I cannot remember.
"Q What did you tell him after [Joe] had told you that he had saw [C.L.] doing that?
"A I asked him where he was at when this was taking place.
"Q What did he tell you?
"A Stated that he was on the bicycle track with [J.G.]. He stated there is a white powdery substance where he was at. It is the bicycle track.
"Q Are you familiar with that bicycle track?
"A I'm familiar with the area, yes.
"Q And the area that you described are you familiar with where it stands in relation to where the two vehicles were located.
"A Yes, it is approximately a quarter of a mile. It is across the entire field and it is to the west, it is southwest of this Plaza Del Toro building.
"Q And then what did you tell [Joe]?
"A I told [Joe] that I didn't feel that he was telling the whole truth. I stated, you know, I don't think it is possible for you to see this young boy inside of the truck doing damage to the truck from a quarter of a mile.
"Q Okay, what happened next?
"A [Joe] became rather nervous and when he was talking to me he wouldn't talk to me he would talk to the floor and from previously in interviewing [Joe] I knew that he was not telling the whole truth at this point.
"Q Did you tell [Joe] that you felt that way?
"A Yes, I did."
[2] Hearing transcript at page 61:

"A [Bob] then told [Joe] that he too knew that he was not telling the truth and he did want the truth from [Joe].
"Q At about this time then after [Bob] made that statement did you make any statements to [Joe] and [Bob] and [Karen]?
"A Yes, I informed them that he is not under arrest and he does not have to answer my questions.
"Q You recall telling them anything else?
"A No.
"Q Did [Bob] respond to that?
"A He stated that he will answer my questions and he will tell the truth because he wanted to get to the bottom of this.
"Q Those were [Bob's] exact words?
"A Yes.
"Q At this point you are sitting in the living room and you told [Joe] that he is not under arrest and he didn't have to answer any questions, is that correct?
"A Yes sir.
"Q And [Bob] stated we are going to get to the bottom of this?
"A Yes.
"Q Did you prompt or coach [Bob] in any way to make that statement?
"A No sir.
"Q After [Bob] made that statement that we are going to get to the bottom of this, did you ask any further questions?
"A I did later on. From that point [Bob] did most of the questioning. I took notes is what I did.
"Q Okay, so really at that particular point in time you weren't asking the question? [Bob] was?
"A Yes sir.
"Q Did you ask some questions?
"A Yes sir, I did ask some.
"Q And after you explained, you made the statement that he was not under arrest and didn't have to answer any questions and [Bob] made his comments, what happened then?
"A [Bob] told him that he wanted the truth and then [Joe] stated that he was there."
[3] We further said that "[w]e express no opinion, however, on the necessity for advising a parent of the right to counsel where the investigation involves only the initial screening of the complaint (such as where investigators visit the parent's home based upon an anonymous complaint) or an initial determination of whether sufficient evidence exists to substantiate such complaint. See In re J.Z., supra 190 N.W.2d at 32." In Interest of R.W.B., 241 N.W.2d at 556.
[4] We are utilizing this "focus" test as developed in our previous case law involving the Uniform Juvenile Court Act, Chapter 27-20, N.D.C.C. In the context of adult criminal proceedings, we have decided that investigatory focus does not require the giving of the Miranda warnings. State v. Fields, 294 N.W.2d 404 (N.D.1980). We concluded in State v. Fields that this Court has adopted a "custody" test for determining the application of Miranda. That conclusion, however, was in the context of adult criminal proceedings where we were considering the application of the Miranda warnings, not a statutory right to counsel under the Juvenile Court Act (Chapter 27-20, N.D.C.C.).
[5] See footnote 2.