575 N.W.2d 420 (1998)
1998 ND 15
In the Interest of R.D.B., a child.
Jason DELLWO, Petitioner and Appellee,
v.
R.D.B., a child, and D.B. and M.B., his parents, Respondents and Appellants.
Criminal No. 970126.
Supreme Court of North Dakota.
January 21, 1998.
*421 Tom M. Henning, Assistant State's Attorney, Dickinson, for petitioner and appellee.
Vince H. Ficek, of Ficek & Buresh, P.C., Dickinson, for respondents and appellants.
SANDSTROM, Justice.
[¶ 1] R.D.B. and his parents, D.B. and M.B. appeal from a juvenile court order finding R.D.B. had committed aggravated assault and was a delinquent child in need of treatment or rehabilitation. We conclude the juvenile court did not err in failing to sua sponte appoint an attorney or guardian to represent R.D.B., and the evidence supports the court's finding R.D.B. willfully caused serious bodily injury to another youth. We therefore affirm.

I
[¶ 2] On the evening of June 14, 1996, R.D.B. and N.B., schoolmates at Dickinson High School, met in a park in Dickinson to engage in a fight. Numerous witnesses testified R.D.B. hit N.B., knocking him to the ground. While N.B. lay curled up on the ground, R.D.B. punched and kicked him several times in the head, back, and abdomen. R.D.B. continued beating N.B. until R.D.B.'s brother pulled him away. As a result of the beating, N.B. suffered a "blowout" fracture of the orbital bone under his left eye which required surgery. N.B. has diminished vision in his left eye and must now wear corrective lenses.
[¶ 3] R.D.B. was 15 years old at the time of the fight. After investigating the incident, a Dickinson police officer filed a juvenile petition alleging R.D.B. had willfully caused serious bodily injury to another, constituting aggravated assault in violation of N.D.C.C. § 12.1-17-02(1).
[¶ 4] At an initial hearing on October 7, 1996, with Judge Hunke presiding, R.D.B. denied the allegations in the petition. The court carefully explained to R.D.B. and his parents they had a right to be represented by an attorney and one would be appointed for them if they could not afford an attorney. R.D.B. and his parents each separately answered they were waiving their right to counsel for this initial proceeding. R.D.B.'s father advised the court they had contacted two attorneys about the matter and anticipated hiring one of these attorneys before the adjudicatory hearing.
[¶ 5] R.D.B. submitted an application for court-appointed counsel. Because the application was not signed and did not provide information about R.D.B.'s parents' financial circumstances, the juvenile supervisor returned the application with instructions to provide the required information. See N.D.C.C. § 27-20-26(2). No further application for court-appointed counsel was made.
*422 [¶ 6] The adjudicatory hearing was held on November 25, 1996, with Judge Anderson presiding. R.D.B. and his parents again appeared without counsel. The court explained to them their right to be represented by an attorney, and asked each of them on the record if they were waiving their right to counsel. R.D.B. and his parents each individually responded they were waiving their right to counsel and representing themselves. During the hearing, R.D.B. and his father presented evidence, examined witnesses, and presented argument to the court. At the conclusion of the hearing, the court found R.D.B. had committed the offense of aggravated assault and was a child in need of treatment or rehabilitation.
[¶ 7] At the dispositional hearing on February 24, 1997, R.D.B. and his parents were represented by counsel. They moved to reopen the adjudicatory phase of the hearing, asserting the court should have sua sponte appointed an attorney or guardian to represent R.D.B. at the prior hearing. The court denied the motion and ordered one year of probation and 100 hours of community service. R.D.B. and his parents appealed.
[¶ 8] The juvenile court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. §§ 27-20-02(6) and 27-20-03(1). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 27-20-56(1). The appeal was timely under N.D.C.C. § 27-20-56(1).

II
[¶ 9] Our review of the juvenile court's decision is governed by N.D.C.C. § 27-20-56(1). On appeal, we review "the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." Although we examine the evidence in a manner comparable to the former procedure of trial de novo, we accord appreciable weight to the findings of the juvenile court, because that court had the opportunity to hear the testimony and observe the demeanor of the witnesses. In Interest C.M., 532 N.W.2d 381, 383 (N.D.1995); In Interest N.W., 510 N.W.2d 580, 581 (N.D.1994).

III
[¶ 10] The appellants assert the court had a duty, in spite of their expressed desire to proceed without counsel, to appoint an attorney or guardian ad litem to represent R.D.B. at the adjudicatory hearing.

A
[¶ 11] N.D.C.C. § 27-20-26(1) governs the right to counsel in juvenile court proceedings:
"Except as otherwise provided under this chapter, a party is entitled to representation by legal counsel at custodial, post-petition, and informal adjustment stages of proceedings under this chapter and, if as a needy person the party is unable to employ counsel, to have the court provide counsel for the party. If a party appears without counsel the court shall ascertain whether the party knows of the party's right to counsel and to be provided with counsel by the court if the party is a needy person. The court may continue the proceeding to enable a party to obtain counsel and shall provide counsel for an unrepresented needy person upon the person's request. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian at custodial, post-petition, and informal adjustment stages of proceedings under this chapter. If the interests of two or more parties conflict, separate counsel must be provided for each of them."
The statute requires appointment of counsel to represent the child if the parents do not appear and represent him or if the interests of the child and the parents conflict. See Olson v. North Dakota Dep't of Transp. Dir., 523 N.W.2d 258, 260-61 (N.D.1994); In Interest B.S., 496 N.W.2d 31, 32-33 (N.D. 1993); State v. Ellvanger, 453 N.W.2d 810, 813 (N.D.1990); In Interest D.S., 263 N.W.2d 114, 120 (N.D.1978); see also Ronald J. Knoll, Case Comment, 67 N.D.L.Rev. 527, 534-35 (1991). R.D.B. and his parents do not allege "undue financial hardship," which would have entitled them to appointment of counsel at public expense under N.D.C.C. § 27-20-26(2).
*423 [¶ 12] If a child is represented by his parents, the child's right to counsel may be waived. B.S., 496 N.W.2d at 33; Huff v. K.P., 302 N.W.2d 779, 781 (N.D.1981); D.S., 263 N.W.2d at 120. In assessing the validity of a waiver, the court must examine the totality of the circumstances to determine if the waiver was knowingly, intelligently, and voluntarily made. B.S., 496 N.W.2d at 33; Huff, 302 N.W.2d at 781; D.S., 263 N.W.2d at 120.
[¶ 13] The appellants argue his parents did not adequately represent R.D.B. and constituted a "mere presence" at the adjudicatory hearing, relying upon our decision in B.S. In that case, this Court explained:
"Beth's testimony shows that she and Richard were not able to `represent' Brent because they were totally unfamiliar with the proceedings and `didn't know what [they] were doing.' The mere presence of a parent does not constitute representation. State v. Grenz, 243 N.W.2d 375 (N.D.1976). At the very least, in order to represent the interests of their child, Brent's parents would have had to understand that it was their role to advise him at the interrogation. Id., 243 N.W.2d at 380. They also would have had to take an `active role' at that proceeding, rather than simply being present and answering questions directed to them by the interrogating officer. See In Interest of J.D.Z., 431 N.W.2d [272,] 274 [(N.D.1988)]."
B.S., 496 N.W.2d at 33-34. The record in this case, however, demonstrates R.D.B.'s parents were far from a "mere presence" at the adjudicatory hearing. R.D.B.'s father in particular took an "active role" in the proceeding by presenting evidence, questioning witnesses, and making closing argument on R.D.B.'s behalf.
[¶ 14] At oral argument, the appellants' counsel suggested a waiver of the right to counsel should be valid only when the representation given by the parents is of the same caliber as the child would have received from an attorney. This would require appointment of counsel in virtually every case, and would be wholly inconsistent with the statute and our prior cases.
[¶ 15] The relevant facts in this case are strikingly similar to those in Huff, in which we held a waiver of the right to counsel by an eleven-year-old girl and her parents was valid. In Huff, as in this case, the parents consulted attorneys before deciding to proceed without counsel. The juvenile court advised the parties of their right to counsel, and asked each individually if they had decided to proceed without counsel. There was no showing any of the parties were impaired. The parents acted as advocates for their children and attempted to represent their best interests, although, as the Huff Court noted, "rather ineffectively." Huff, 302 N.W.2d at 783.
[¶ 16] In Huff, the child was only eleven years old. Here, R.D.B. was sixteen at the time of the adjudicatory hearing. The record demonstrates R.D.B. was an average to above-average student who had several prior experiences in the juvenile justice system. Under these circumstances, we agree with the juvenile court's conclusion R.D.B. and his parents were fully advised of their right to counsel, and knowingly, intelligently, and voluntarily waived their right to counsel at the adjudicatory hearing.

B
[¶ 17] The appellants assert the juvenile court had a duty to appoint a guardian ad litem to represent R.D.B.'s interest in these proceedings. N.D.C.C. § 27-20-48 provides:
"Guardian ad litem. The court at any stage of a proceeding under this chapter, on application of a party or on its own motion, shall appoint a guardian ad litem for a child who is a party to the proceeding if he has no parent, guardian, or custodian appearing on his behalf or their interests conflict with his or in any other case in which the interests of the child require a guardian. A party to the proceeding or his employee or representative may not be appointed."
In this case, R.D.B.'s parents were "appearing on his behalf," and there are no factors demonstrating this is an "other case in which the interests of the child require a guardian." R.D.B.'s parents were at all relevant times *424 present with R.D.B. and represented his interests. Under these circumstances, the juvenile court did not have a duty to appoint a guardian ad litem.

C
[¶ 18] The appellants assert there was a conflict between R.D.B.'s interests and those of his parents. They therefore assert the court had a duty under N.D.C.C. §§ 27-20-26(1) and 27-20-48 to appoint either an attorney or a guardian ad litem to represent R.D.B.'s interests.
[¶ 19] The alleged "conflict" between the interests of R.D.B. and his parents is the parents' decision not to hire counsel, based upon financial considerations. The appellants assert, when parents decide they do not want to pay for an attorney in juvenile proceedings, that decision conflicts with the child's interest in being represented by counsel.
[¶ 20] We believe the statutes were intended to apply only when there is a conflict between the substantive interests of the parents and the substantive interests of the child, as, for example, in an action for termination of parental rights. The statutes require appointment of a third party to represent the child only when the parents' personal rights or interests would interfere with their ability to fairly represent their child's interests. Furthermore, the interpretation urged by the appellants would require the juvenile court to sua sponte appoint counsel or a guardian in every case where the parents decided, on financial grounds, not to hire an attorney to represent the child. We do not interpret the statutes to require that result. If the child disagrees with his parents' decision and expresses a desire to have representation by counsel, N.D.C.C. § 27-20-26(2) authorizes the court to appoint counsel to represent the child and to order the parents to pay the fees and expenses.

IV
[¶ 21] The appellants assert there was insufficient evidence to show R.D.B. "willfully" caused a "serious bodily injury" to N.B.

A
[¶ 22] The petition alleged R.D.B. had committed aggravated assault in violation of N.D.C.C. § 12.1-17-02, which provides in part:
"Aggravated assault. A person is guilty of a class C felony if that person:
"1. Willfully causes serious bodily injury to another human being; ..."
N.D.C.C. § 12.1-01-04(29) defines "serious bodily injury":
"`Serious bodily injury' means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent loss or impairment of the function of any bodily member or organ."
[¶ 23] N.B. testified he suffers diminished vision in his left eye and must now wear corrective lenses as a result of R.D.B.'s assault. The appellants presented no evidence to dispute N.B.'s testimony. Permanent reduction in vision of the eye, with a resulting need to wear corrective lenses, constitutes "permanent ... impairment of the function of [a] bodily member or organ" under the statute. See also, e.g., State v. Silva, 75 Haw. 419, 864 P.2d 583, 590, 593 (1993); State v. Davis, 689 S.W.2d 743, 744 (Mo.Ct. App.1985); People v. Hirschhorn, 231 A.D.2d 591, 648 N.Y.S.2d 34, 35 (1996). Giving appreciable weight to the juvenile court's findings, we conclude there was clear and convincing evidence R.D.B. caused "serious bodily injury" to N.B.

B
[¶ 24] The appellants assert there was insufficient evidence to support the finding R.D.B. "willfully" caused N.B.'s injuries. Although the appellants frame the issue in terms of the culpability requirement for aggravated assault"willfully"their argument on this issue focuses entirely upon the defenses of self-defense and excuse. Their argument, as we understand it, is this was "mutual combat," and R.D.B. was mistaken as to the amount of force he was entitled to use in his defense.
*425 [¶ 25] Our self-defense statute explicitly provides a person is not justified in using force in instances of mutual combat:
"12.1-05-03. Self-defense. A person is justified in using force upon another person to defend himself against danger of imminent unlawful bodily injury, sexual assault, or detention by such other person, except that:
* * * * * *
"2. A person is not justified in using force if:
* * * * * *
"b. He has entered into a mutual combat with another person or is the initial aggressor unless he is resisting force which is clearly excessive in the circumstances. A person's use of defensive force after he withdraws from an encounter and indicates to the other person that he has done so is justified if the latter nevertheless continues or menaces unlawful action."
See also ProServe Corp. v. Rainey, 536 N.W.2d 373, 378 (N.D.1995) (when parties enter into mutual combat, neither person is justified in using force under N.D.C.C. § 12.1-05-03).
[¶ 26] There was no evidence presented showing R.D.B. was resisting force which was clearly excessive in the circumstances, or withdrew from the encounter and was pursued by N.B. Rather, the evidence clearly and convincingly shows R.D.B. and N.B. each intended to fight, R.D.B. knocked N.B. down, N.B. curled up in a defensive position, and R.D.B. continued beating and kicking N.B. while he lay curled up on the ground. Giving appreciable weight to the juvenile court's findings, we conclude there was clear and convincing evidence R.D.B. acted "willfully," and the court did not err in concluding R.D.B.'s conduct constituted aggravated assault in violation of N.D.C.C. § 12.1-17-02.

V
[¶ 27] The order of the juvenile court is affirmed.
[¶ 28] VANDE WALLE, C.J., and NEUMANN, MARING, and MESCHKE, JJ., concur.