Damon **ANDERSON,** Assistant State's Attorney, Petitioner and Appellee,

v.

**H. M. (Mother) and D. M. (Stepfather), Respondents and Appellants.**

In Interest of A. C., a Child.

Civ. No. 10092.

Supreme Court of North Dakota.

March 18, 1982.

Damon Anderson, Asst. State's Atty., Grand Forks, for petitioner and appellee.

Gregory D. Lewis, argued, Legal Aid Ass'n, University of North Dakota School of Law, Grand Forks, and Gary Jackson, Senior Law Student, Grand Forks, for respondents and appellants.

Thomas B. Jelliff, Grand Forks, guardian ad litem for A. C., a child.

VANDE WALLE, Justice.

The mother and the stepfather of A. C. appealed from the final order of the district court for Grand Forks County, juvenile division, which confirmed the juvenile referee's findings of fact, conclusions of law, and recommendation for disposition. We affirm.

The juvenile referee's findings were that A. C. was a deprived child and recommended that legal custody of A. C. be placed in the Social Service director of Grand Forks County but that A. C. remain in the physical care, custody, and control of her parents subject to a number of conditions designed to provide proper parental care. The incident which culminated in A. C.'s being removed from her parents' home was only the last in a series of incidents. The record before us indicates the first incident to be the adjudication on February 23, 1978, that A. C. was a deprived child. In February of 1979 A. C. was returned to the

legal custody of her mother. The second incident was reported by a protective social worker for the Grand Forks County Social Service Center. In an affidavit, the social worker stated that she had investigated a report of child abuse which had been filed on November 7, 1980. Because she substantiated the report of child abuse she stated, "That based on the alleged violence within this home and based on the information provided in another Abuse and Neglect Report filed this date [January 26, 1981], your Affiant fears for the health and safety of said minor [A. C.]." The "alleged violence" that occurred on November 7, 1980, was the wounding of A. C.'s stepfather by A. C.'s mother with a hunting knife. The wound was superficial and A. C.'s stepfather's account of the incident makes it appear to have been an accident. However, the investigating police officers indicated that A. C.'s mother stated that she wished she had killed A. C.'s stepfather. No charges were pressed against A. C.'s mother.

The third incident occurred on January 3, 1981, when A. C.'s stepfather was charged with reckless endangerment. Although the details of the incident are unclear, it appears that A. C.'s mother became frightened when A. C.'s stepfather was handling a rifle around her and A. C. The last incident occurred on January 25, 1981. According to a neighbor, A. C. went to the neighbor's house without a coat or shoes and asked if the neighbor would call the police because her stepfather was beating her mother. When the police arrived at A. C.'s home neither A. C.'s mother nor her stepfather knew the whereabouts of A. C. A. C.'s mother was arrested for obstructing a police officer because she was abusive to the police officer and did not cooperate in locating A. C. During each of these last three incidents A. C. was present, both parents admitted to being intoxicated or having heavily consumed alcoholic beverages, and the Grand Forks police were called to the family home. The next day, January 26, 1981, the juvenile supervisor issued a temporary custody order, pursuant to Section 27-20-06(1)(h), N.D.C.C., removing A. C. from her parents' custody. A petition was also filed, pursuant to Section 27-20-08(3) and Section 27-20-21,[1] alleging A. C. to be a "deprived child" as defined in Section 27-20-02(5)(a).[2] The district court set a hearing on the petition for February 25, 1981, appointed a guardian ad litem, referred the hearing on the petition to a juvenile referee, issued a summons to A. C.'s parents to appear at the hearing on February 25, 1981, and notified A. C.'s parents of the right to counsel.

1. Section 27-20-08, N.D.C.C., provides, in part, that a proceeding involving temporary custody may be commenced:

"3. In other cases by the filing of a petition as provided in this chapter. The petition and all other documents in the proceeding shall be entitled 'In the interest of _____, a child.' "

Section 27-20-21, pertaining to the contents of a petition, reads:

"The petition shall be verified and may be on information and belief. It shall set forth plainly:

"1. The facts which bring the child within the jurisdiction of the court, with a statement that it is in the best interest of the child and the public that the proceeding be brought and, if delinquency or unruly conduct is alleged, that the child is in need of treatment or rehabilitation;

"2. The name, age, and residence address, if any, of the child on whose behalf the petition is brought;

"3. The names and residence addresses, if known to petitioner, of the parents, guardian, or custodian of the child and of the child's spouse, if any. If none of his parents, guardian, or custodian resides or can be found within in the state, or if their respective places of residence address are unknown, the name of any known adult relative residing within the county, or, if there be none, the known adult relative residing nearest to the location of the court; and

"4. Whether the child is in custody and, if so, the place of his detention and the time he was taken into custody."

2. The definition contained in Section 27-20-02 is:

"5. 'Deprived child' means a child who:

"a. Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for one child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of one child's parents, guardian, or other custodian; . . ."

The parents of A. C. argue that the statutory procedure set forth in Title 27–20 required an informal hearing within 96 hours of A. C.'s detention [Sec. 27–20–17(2) ] [3] and also that a hearing on the petition alleging deprivation should have been held within ten days of the date the petition was filed [Sec. 27–20–22(1) ].[4] They argue that because neither the 96-hour informal hearing nor the hearing on the petition was held within ten days, the petition alleging deprivation should be dismissed. They also argue that, even if we should disagree with the first issue, the Due Process Clause of the Fourteenth Amendment requires notice and hearing as soon as practicable after a temporary custody order has been issued by a juvenile supervisor. We agree that North Dakota's statutory scheme which requires an informal detention hearing within 96 hours and the hearing on the petition within 10 days applies to proceedings involving an allegedly deprived child except where a juvenile supervisor has issued a temporary custody order pursuant to Section 27–20–06(1)(h).[5] When that occurs we disagree with the argument that the 96-hour informal detention hearing and the ten-day hearing on the petition are required by statute. We do agree, however, that due process requires notice and a hearing after a temporary-custody order has been issued by the juvenile supervisor.

North Dakota's Title 27–20 is basically the Uniform Juvenile Court Act. The Uniform Act "has been drawn with a view to fully meeting the mandates of these decisions. [*Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).] At the same time the aim has been to preserve the basic objectives of the juvenile court system and to promote their achievement. In short, the Act provides for judicial intervention when necessary for the care of deprived children and for the treatment and rehabilitation of delinquent and unruly children, but under defined rules of law and through fair and constitutional procedure." Uniform Juvenile Court Act (U.L.A.) Commissioners' Prefatory Note.

The source of the problem raised here is Section 27–20–06(1)(h), an amendment to North Dakota's Juvenile Court Act. It expands the authority of the juvenile supervisor beyond that contemplated by the Uniform Act and as a result complicates the operation of the Act. Prior to North Dakota's adoption of Section 27–20–06(1)(h), the

**3.** Subsection 2 of Section 27–20–17 provides: "2. If he is not so released, a petition under section 27–20–21 shall be promptly made and presented to the court. An informal detention hearing shall be held promptly and not later than ninety-six hours after he is placed in detention to determine whether his detention or shelter care is required under section 27–20–14. Reasonable notice thereof, either oral or written, stating the time, place, and purpose of the detention hearing shall be given to the child and if they can be found, to his parents, guardian, or other custodian. Prior to the commencement of the hearing, the court shall inform the parties of their right to counsel and to appointed counsel if they are needy persons, and of the child's right to remain silent with respect to any allegations of delinquency or unruly conduct."

**4.** Subsection 1 of Section 27–20–22 reads: "1. After the petition has been filed the court shall fix a time for hearing thereon, which shall not be later than thirty days after the filing of the petition. If the child is in detention, the time for the hearing shall not be later than ten days after the filing of the

petition. The court may extend the time for hearing for good cause shown. The court shall direct the issuance of a summons to the parents, guardian, or other custodian, a guardian ad litem, and any other persons as appear to the court to be proper or necessary parties to the proceeding, requiring them to appear before the court at the time fixed to answer the allegations of the petition. The summons shall also be directed to the child if he is fourteen or more years of age or is alleged to be a delinquent or unruly child. A copy of the petition shall accompany the summons unless the summons is served by publication in which case the published summons shall indicate the general nature of the allegations and where a copy of the petition can be obtained."

**5.** Section 27–20–06(1)(h) provides that the juvenile supervisor shall:
"h. Make such temporary order not to exceed thirty days for the custody and control of a deprived child as he may deem appropriate."

procedure required when delinquent, unruly, and deprived children were in detention or custody primarily followed the Uniform Act.

■ The first issue is whether or not the informal detention hearing within 96 hours [Sec. 27–20–17(2)] and the hearing on the petition within ten days [Sec. 27–20–22(1)] apply to deprived as well as to delinquent and unruly children under our statutory scheme. The language used in the Uniform Act is not specific and the Commissioners' Notes do not assist us in answering this question. Georgia has also adopted the Uniform Act, and its Supreme Court has decided a case with substantially similar issues. *Sanchez v. Walker County Dept. of Family and Children Services*, 237 Ga. 406, 229 S.E.2d 66 (1976), involved a challenge by the mother of an allegedly deprived child. Prior to *Sanchez*, the Georgia appellate courts had construed the procedural requirements of due process contained in the Juvenile Court Code of Georgia, primarily the Uniform Juvenile Court Act, to protect the rights of allegedly delinquent or unruly children. In *Sanchez*, the mother argued that the same procedural requirements may be invoked to protect the mother's parental interests in the child and in the court proceedings involving an allegedly deprived child. The Georgia court held that the "detention or taking of a child into custody triggers the application of the procedural requirements of the Juvenile Code." 237 Ga. at 408, 229 S.E.2d at 68. The court decided that the child in *Sanchez* was in detention and also that when a child is in detention the provision of the statute which required an adjudicatory hearing within ten days of the filing of a petition was mandatory. Thus, "A failure to comply with notice and hearing requirements of the juvenile code after an allegedly deprived child has been taken from the parent's custody does prejudice or injure the rights of the parent, primarily the right to possession of the child." 237 Ga. at 409, 229 S.E.2d at 69.

Georgia has construed its Juvenile Code to require the application of notice and hearing requirements to proceedings involving allegedly deprived children. But North Dakota's statute has one important provision which distinguishes it from the Georgia decision in *Sanchez* and the Uniform Act. Section 27–20–06(1)(h), N.D.C.C., provides that the juvenile supervisor may: "Make such temporary order not to exceed thirty days for the custody and control of a deprived child as he may deem appropriate."

This provision was added in 1971, two years after North Dakota adopted the Uniform Juvenile Court Act. House Bill No. 1399, § 3, 1971 N.D.Sess.Laws, ch. 306. Section 27–20–06(1)(h), as introduced, is taken verbatim from Section 27–16–02(7), N.D.C.C., which was superseded by the Uniform Juvenile Court Act. The Legislature amended the proposal to limit the duration of a temporary-custody order to 30 days and its use to deprived children. Because it was added after the adoption of the Uniform Act we cannot assume that it has no effect upon the operation of the Uniform Act. As we discuss below, it creates a new procedure not contemplated by the Uniform Act and it is substantially at odds with the procedural structure of the Uniform Act. Therefore, we cannot construe it to conform to the procedural requirements of the Uniform Act. To effectuate the purpose of Section 27–20–06(1)(h) we must attempt to ascertain the intent of the Legislature.

The legislative history of House Bill 1399 provides no useful information that would assist us in determining the legislative intent as to how it would function within the structure of the existing Juvenile Court Act. However, committee minutes on an amendment to Section 27–20–13(1)(c) do provide some insight. Senate Bill 2159, § 1, 1979 N.D.Sess.Laws, ch. 364.

Section 27–20–13 now reads, in part:
"1. A child may be taken into custody:
"a. Pursuant to an order of the court under this chapter;
"b. Pursuant to the laws of arrest;
"c. By a law enforcement officer or a juvenile supervisor, or by order of the juvenile supervisor made pursuant to subdivision h of subsection 1 of section

27–20–06, if there are reasonable grounds to believe (1) that the child is suffering from illness or injury or is in immediate danger from his surroundings, and that his removal is necessary, or (2) that the child has run away from his parents, guardian, or other custodian.

"<u>An order of the juvenile supervisor made pursuant to this subsection shall be reduced to writing within twenty-four hours of its issuance.</u>" [Language added in 1979 underlined.]

The committee minutes for this amendment indicate that the addition of Section 27–20–06(1)(h) was to permit action in situations which required the removal of the child in order to protect him. The minutes also indicate that the language added to Section 27–20–13(1)(c) allows the juvenile supervisor to order another person to take a child into custody. This addition was deemed necessary to provide an immediate response to emergency situations where, for example, the juvenile supervisor may be physically located some distance from a child. Upon an order from the juvenile supervisor, a child may be taken into temporary custody by someone other than a law-enforcement officer or the juvenile supervisor.

Both of these amendments to North Dakota's Juvenile Court Act appear to effectuate the public purposes stated in Section 27–20–01:

"1. To provide for the care, protection, and wholesome moral, mental, and physical development of children coming within its provisions; . . .

[and]

"3. To achieve the foregoing purposes in a family environment whenever possible, separating the child from his parents only when necessary for his welfare or in the interest of public safety; . . ."

Both also duplicate, to some extent, the operation of Section 27–20–13 and Section 27–20–14, which permit a law-enforcement officer to take a child into custody if there are reasonable grounds to believe that the child is in immediate danger and that his removal is necessary. The addition of Section 27–20–06(1)(h), which authorizes a 30-day temporary-custody order, adds to the protection which the juvenile system can provide to an allegedly deprived child. It also adds to the tools with which the juvenile system can effect a change in the allegedly deprived child's home environment.

We now consider the effect of Section 27–20–06(1)(h) upon Chapter 27–20. If, as the court in *Sanchez* decided, the provisions of the Uniform Juvenile Court Act required the application of the hearing and notice provisions when deprived, as well as delinquent and unruly, children are detained or in custody, the adoption of Section 27–20–06(1)(h) rendered that requirement ineffectual, but only when a juvenile supervisor issued a temporary-custody order. Section 27–20–06(1)(h) interposed a 30-day temporary-custody order into the operation of both the 96-hour hearing and the ten-day hearing. Therefore, it could not have been the Legislature's intent to apply the 96-hour and ten-day hearing requirements to deprived children when a juvenile supervisor issued a temporary-custody order pursuant to Section 27–20–06(1)(h).

Except for the amendments to Sections 27–20–06(1)(h) and 27–20–13(1)(c), we believe that the result in *Sanchez* would also apply to North Dakota. If, as the State argues, the procedural hearing and notice requirements do not apply to situations where an allegedly deprived child is involved, then even under the Uniform Act there is no statutory limit to the length of time which an allegedly deprived child may be detained or placed in shelter care. Therefore, we decide that the 96-hour informal detention hearing and the hearing on the petition within ten days *do* apply to proceedings involving deprived children *unless* a juvenile supervisor has issued a temporary custody order.

The State concedes that when an allegedly delinquent or unruly child is detained an informal detention hearing must be held within 96 hours, a petition under Section 27–20–21 must be presented, and a hearing on the petition must be held within ten days after the filing of the petition, but contends that neither hearing requirement applies to a child subject to a temporary-custody order because the allegedly deprived child is not considered detained.

We·acknowledge the State's argument that there is a difference between an allegedly delinquent or unruly child and one alleged to be deprived. The actions with the first two are directed at the child and are quasi-criminal in nature. State intervention is required because the child has committed some act.[6] The reasons for the State's intervention when a deprived child is involved are different. Intervention of the juvenile system is due to the actions of his parents, guardian, or other custodian. Often the deprived child must be removed from the home environment to protect the child's health and safety. Because the juvenile supervisor in this case did issue a temporary-custody order pursuant to Section 27–20–06(1)(h), the 96-hour informal detention hearing [Sec. 27–20–17(2)] and the requirement that the hearing on the petition be held within ten days [Sec. 27–20–22(1)] are not applicable.

█ The second issue is whether or not North Dakota's statutory scheme, which permits a juvenile supervisor to issue a 30-day temporary-custody order, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

We have said that "a parent has a fundamental, natural right to his child. This right has been recognized to be of constitutional dimension. However, this is not an absolute right. [Citations omitted.]" In addition, "The Legislature has noted a strong preference for parental guardianships. Section 27–20–01, NDCC, states that Chapter 27–20, NDCC, shall be construed to achieve its purposes in a family environment whenever possible, 'separating the child from his parents only when necessary for his welfare or in the interest of public safety.' Section 27–20–01(3), NDCC." *McGurren v. S. T.*, 241 N.W.2d 690, 695 (N.D.1976). In order to give effect to the purposes expressed in Chapter 27–20, "we therefore require a grave reason before removing a child from her parents' custody." *Bjerke v. D. T.*, 248 N.W.2d 808, 811 (N.D. 1976).

The parents of A. C. concede that it is within the State's use of the police power to enact legislation which provides for the exercise of its right and duty as parens patriae. They also concede that the care and treatment of children are matters of statewide concern. One of the public purposes which the Legislature has expressed to guide construction of Chapter 27–20 is: "To provide for the care, protection, and wholesome moral, mental, and physical develop-

---

**6.** The definitions of "delinquent act," "delinquent child," and "unruly child" in Section 27–20–02 are:

"3. 'Delinquent act' means an act designated a crime under the law, including local ordinances or resolutions of this state, or of another state if the act occurred in that state, or under federal law, and the crime does not fall under subdivision c of subsection 10 and is not a traffic offense as defined in subsection 9.

"4. 'Delinquent child' means a child who has committed a delinquent act and is in need of treatment or rehabilitation.

.    .    .    .    .

"10. 'Unruly child' means a child who:

"a. Is habitually and without justification truant from school;

"b. Is habitually disobedient of the reasonable and lawful commands of his parent, guardian, or other custodian and is ungovernable; or who is willfully in a situation dangerous or injurious to the health, safety, or morals of himself or others;

"c. Has committed an offense applicable only to a child; or

"d. Has committed a noncriminal traffic offense without ever having been issued an operator's license or permit if one was required; and

"e. In any of the foregoing instances is in need of treatment or rehabilitation."

ment of children coming within its provisions; ..." Sec. 27–20–01(1), N.D.C.C.

In order to decide this due-process issue we must balance the interests of the State in the welfare of the children within the State with the natural fundamental right which a parent has to his child. Inherent in the resolution of this issue is a consideration of the extent that the interests of the State may interfere with the right of a parent. In deciding the issue we keep in mind that "[w]e are sensitive to the argument that it is dangerous to allow the judgment of social workers to determine how a family is run. Parental autonomy should be favored and State intervention minimized." *Bjerke v. D. T., supra,* 248 N.W.2d at 814.

Weighing the interests of the State and the purpose of Section 27–20–06(1)(h) against the rights of the parents, we believe that due process requires, at the very minimum, an informal detention hearing on the temporary-custody order permitted by Section 27–20–06(1)(h). It is an unreasonable interference with the parents' fundamental rights to permit the juvenile supervisor to remove a child from his home for 30 days without a hearing.

We have no doubt that Section 27–20–06(1)(h) permits the juvenile supervisor to act in exigent circumstances when a child must be quickly removed from a home. We do not today diminish the authority of the juvenile supervisor to do so. However, once the child has been removed from his home pursuant to Section 27–20–06(1)(h) due process requires that some procedural safeguard be used to test the necessity of the removal, to inform the parents of the reasons why the child was removed, and to permit the parents to respond.

We believe that having decided that an informal detention hearing is required we need to detail what is necessary to com-

port with due process. For guidance we look to the existing procedural safeguards already contained within the legislation which protects children. Section 27–20–17(2) requires that when a child is detained or placed in a shelter-care facility and the intake officer has determined that detention or shelter care is required to protect the child, or for other reasons enumerated in Section 27–20–14, a specific procedure must be followed. That procedure includes the requirement of an informal detention hearing within 96 hours after the child is placed in detention to determine whether detention or shelter care is required. We note that in similar circumstances when the welfare of a child requires State intervention, a child may be kept in the custody of a hospital not to exceed 96 hours.[7]

We decide that when a child alleged to be deprived is taken into custody pursuant to Section 27–20–06(1)(h), these procedures must be followed:

1. An informal detention hearing must be held promptly by the juvenile supervisor but not later than 96 hours after the child is taken into custody; and

2. The juvenile supervisor must release the child unless there are reasonable grounds to believe that custody is required to protect the child; and

3. Reasonable notice, either oral or written, shall be given to the child and to his parents, guardian, or other custodian stating the time, place, and purpose of the informal detention hearing; and

4. Notice must be given to the parents, guardian, or custodian of their right to counsel and to appointed counsel if they are needy persons; and

5. If, after the informal detention hearing, the juvenile supervisor retains

---

7. Section 50–25.1–07, N.D.C.C., provides:
"Any physician examining a child with respect to whom abuse or neglect is known or suspected, ... may keep the child in the custody of the hospital or medical facility for not to exceed ninety-six hours and must immediately notify the juvenile court and the division in order that child-protective proceedings may be instituted."

custody of the child, a petition alleging deprivation must be filed with the juvenile court and a hearing on the petition must be held before the expiration of the temporary custody order.

Although we agree with the parents of A. C. that due process requires a hearing on the temporary-custody order issued by the juvenile supervisor, we do not agree that the remedy in this case requires a reversal and dismissal of the deprivation petition. We believe that the facts presented here are sufficient to support the need to remove A. C. To dismiss without prejudice, as was done in *Sanchez*, would serve no purpose at this stage of the proceeding. A. C. is now in the physical care, custody, and control of her parents, under the supervision of the Grand Forks County Social Service Center. Custody in her parents is subject to conditions designed to provide proper parental care or control for A. C.'s physical, mental, and emotional health. The period of time during which A. C. is in the legal custody of the director of the Grand Forks County Social Service Center is one year, commencing March 19, 1981.

The decision of the juvenile court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.