In the Interest of J.S. and J.T.S., Minor Children.

Michelle MACINTOSH, Petitioner and Appellee,

v.

S.E.S., Respondent and Appellant,

and

J.S. and J.T.S., Respondents.

Civ. No. 10606.

Supreme Court of North Dakota.

July 11, 1984.

Ronald L. Hilden, Asst. States Atty., Dickinson, for petitioner and appellee; argued by Ronald L. Hilden, Asst. States Atty., Dickinson.

Baird & Senn, Dickinson, for respondent and appellant S.E.S.; argued by David F. Senn, Dickinson.

William G. Heth, Dickinson, Guardian Ad Litem; no appearance.

PEDERSON, Justice.

This is an appeal under § 27–20–56, NDCC, from a judgment of the juvenile court terminating S.E.S.'s (Sandra's) parental rights to her two children, J.S. and J.T.S. We affirm the judgment. In a separate determination based upon abandonment, the parental rights of E.S. (Ernest), Sandra's husband, were terminated and there has been no appeal therefrom.

The word "instability" characterizes Sandra's life, at least from the day that (at age 17) she and her first baby (J.S.) were abandoned by Ernest and she was left to fend for herself. Sandra, in 1980, surrendered her first baby to her mother (Ruth), living in Alaska at the time, and spent the next three years living with various "boyfriends" or "girlfriends" from Bremerton, Washington to Norfolk, Virginia, and including Great Falls, Montana and Dickinson, North Dakota. J.S. was eventually returned to Sandra and she gave birth to a second child (J.T.S.), father unknown, while living in Dickinson with one of the "boyfriends" who was in jail on a drug charge at that time.

In 1981, while Sandra and her children were living in Dickinson, Social Services personnel first received reports of suspected child abuse or neglect by Sandra. Investigations disclosed justification for the reports in some cases but no justification in other cases. Sandra was furnished aid and encouragement by Social Services personnel but conditions did not improve. Sandra described herself at that time as "not caring" and "tired of being hurt." It was her own conclusion that it would be in her best interest and in the best interest of J.S. and J.T.S. that she surrender custody of both children to the Stark County Social Services Board.

One month before the trial of the case, Sandra appears to have ended her nomadic living when she moved in with her unemployed mother, then living in Phoenix, Arizona (who has a life-style somewhat similar to Sandra's). Also residing with her mother in a three-bedroom apartment are a brother, a sister and Sandra's mother's current "boyfriend" and his seven-year-old daughter. Sandra testified that since giving up her children and leaving Dickinson she has acquired her "G.E.D." and, although she has no source of income to live on, her "outlook on life" has changed, she attends the Mormon church, and she believes she can now care for her children with the help of Ruth, her mother,[1] and a neighbor. She says that she has had some babysitting jobs which have improved her parenting capability and that she no longer uses alcohol. Sandra intends to find a full-time job in Phoenix, enroll as a part-time student at Arizona State University and, with a little help, attend to all of the needs of J.S. and J.T.S.

The juvenile court made extensive findings of fact and conclusions of law and, as we have often said, under § 27–20–56(1), NDCC, we give those findings appreciable weight but we are not bound by them to the extent provided by Rule 52(a), NDRCivP. "We nevertheless recognize that the trial court had the opportunity to observe the demeanor of the witnesses." *McBeth v. J.J.H.*, 343 N.W.2d 355, 358 (N.D.1984). See also § 27–20–56, NDCC.

We paraphrase as follows the juvenile court's conclusions in order that the children's identity "not appear on the record on appeal," (§ 27–20–56):

[1]. We were informed by counsel during oral argument that Ruth is now deceased.

(1) Sandra is unwilling, unfit or unable to provide proper parental care, subsistence or training or education for the children.

(2) This deprivation of the children is not due primarily to lack of financial means.

(3) This deprivation is likely to continue.

(4) The evidence itself demonstrates prognosticative likelihood of continued deprivation and harm.

Although Sandra now argues that the evidence is not sufficient to clearly and convincingly support a determination that (A) her children are deprived or (B) the deprivation is likely to continue, we view her argument as primarily semantogenic.

■ Sandra's own testimony must be interpreted as a judicial admission that at the time she surrendered custody, her children were "deprived" and thus harmed by her neglect, even though those words were not spoken. A voluntary invitation for state intervention surely lessens the necessary "triggering circumstances" discussed in *In Interest of D.R.J.*, 317 N.W.2d 391, 394 (N.D.1982). We said in *Anderson v. H.M.*, 317 N.W.2d 394, 398 (N.D.1982) that "detention or taking of a child into custody triggers the application of the procedural requirements of the Juvenile Code." Most termination cases that have reached this court have involved intervention opposed by a parent and are thus not reliable authority for Sandra's argument. We conclude that triggering requirements are amply met to permit consideration of the future best interests of J.S. and J.T.S. in this case.

■ Even though Sandra cannot, in this case, raise an issue as to the initial "deprivation" of her children, she is not prevented from disputing a determination that deprivation is likely to continue. Sandra's rationale starts with the holding in *Waagen v. R.J.B.*, 248 N.W.2d 815, 819 (N.D.1976), that a finding of deprivation can be made, even where the parent has not had custody, if there is sufficient prognostic evidence of present and future inability of the parent.

She then states that "there must be prognostic evidence of deprivation and that it will likely continue," and concludes that "there was no such evidence presented at the hearing [in this case]."

■ Further support for requiring prognostic evidence is found in *Asendorf v. M.S.S.*, 342 N.W.2d 203, 207–208 (N.D. 1983) where Justice Sand, for a unanimous court, wrote:

"Evidence of past deprivation ... is not alone enough; it must be prognostic."

It is noted, however, that in *Asendorf* we analyzed the "facts" in the record and concluded therefrom that they clearly and convincingly supported the finding that the deprivation was likely to continue. An expert expressing a factually supported opinion or prediction that Sandra will likely not be a fit parent in the near future would, of course, have been helpful but where the facts themselves readily lead to that conclusion by the juvenile court, we are not prepared to conclude otherwise merely because none of the witnesses expressly predicted that kind of future. Prognostic evidence is evidence that furnishes the basis for a reasonable prediction as to future action.

■ We conclude that sufficient clear and convincing prognostic evidence was received in this case and, accordingly, we conclude that it was not error for the juvenile court to find that the deprivation of J.S. and J.T.S. would likely continue if they were returned to Sandra.

The judgment terminating parental rights is affirmed.

ERICKSTAD, C.J., and GIERKE, SAND and VANDE WALLE, JJ., concur.