In the Interest of N.W., A Child.

GOLDEN VALLEY COUNTY SOCIAL SERVICES, Petitioner and Appellee,

v.

P.G.S., Respondent,

and

J.S., Respondent and Appellant (Two Cases).

In the Interest of A.S., A Child.

Civ. Nos. 930113, 930114.

Supreme Court of North Dakota.

Jan. 5, 1994.

Glen R. Bruhschwein, Asst. State's Atty., Dickinson, for petitioner and appellee. Submitted on briefs.

William G. Heth, Dickinson, for respondent and appellant. Submitted on briefs.

SANDSTROM, Justice.

J.S. (Jane, a pseudonym) appealed from orders of the juvenile court extending temporary foster care for N.W. and A.S. (Nancy and Ann, pseudonyms) for 15 months. We affirm.

P.S. (Paul, a pseudonym) and Jane are married. Ann, born on September 11, 1983, is their natural daughter. Nancy, born on December 5, 1981, is Jane's daughter from a previous marriage, and Paul is Nancy's stepfather. Paul and Jane also have a son, born

on July 23, 1985, who is not involved in these proceedings. On February 5, 1991 the juvenile court determined Nancy and Ann were deprived children and placed them in the temporary custody of the Golden Valley Social Service Board (the board) for 18 months.[1] On November 22, 1991 the court extended the temporary custody placements for another 18 months.

In November 1992, the board moved to again extend the temporary custody arrangements. In response, Paul and Jane moved the court to terminate its prior order and to return Nancy and Ann to them. After two hearings on these motions, the juvenile court issued orders on March 17, 1993, denying Paul and Jane's motion to terminate the court's prior custody order and granting an extension of temporary foster care for another 15 months. Appealing from the extension, Jane asserts the court had no "prognostic evidence" that Nancy and Ann's deprivation is likely to continue. She argues the court should have refused the extension and returned Nancy and Ann to Paul and her.[2]

A deprived child under N.D.C.C. § 27–20–02(5)(a), is a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." The finding of deprivation must be supported by clear and convincing evidence. *In Interest of J.K.S.*, 321 N.W.2d 491 (N.D.1982). Upon finding a child is deprived, the juvenile court can temporarily place the child in the legal custody of an appropriate party outside the parental home. Section 27–20–30, N.D.C.C. The juvenile court can extend an order of disposition, under N.D.C.C. § 27–20–36(4):

"4. ... An order of extension may be made if:

\*    \*    \*    \*    \*    \*

"c. The court finds that the extension is necessary to accomplish the purposes of the order extended; and

"d. The extension does not exceed eighteen months from the expiration of an order limited by subsection 3 or two years from the expiration of any other limited order...."

Before extending an order of disposition the juvenile court must find the child is still deprived. *In Interest of J.K.S.* at 493.

Our review of the juvenile court's decision is governed by N.D.C.C. § 27–20–56(1). On appeal, we review "the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." Although we examine the evidence in a manner comparable to the former procedure of trial de novo, we give deference to the juvenile court's decision, because that court has had the opportunity to observe the candor and demeanor of the witnesses. *In Interest of J.K.S.*

The juvenile court's original finding that Nancy and Ann were deprived was based upon allegations both girls were physically abused at home and Nancy was also sexually abused by Paul. Although Paul and Jane initially denied abuse, they now concede there was sexual and physical abuse, and they agree the entire family needs to continue professional counseling to resolve some family problems. Paul pled guilty to one count of corruption or solicitation of minors and to one count of sexual assault. However, Paul and Jane argue there is no evidence the girls are now deprived, and they assert the court erred in extending the temporary foster care. Paul and Jane want Nancy and

---

1. The board placed Nancy and Ann in foster care on January 15, 1991, but returned them to Paul and Jane's home on March 27, 1991. The girls remained in Paul and Jane's physical custody until October 23, 1992, when the board again placed them in foster care, with renewed suspicions of sexual abuse after Nancy's counselor, Mary Ann Brauhn, observed in Nancy symptoms of withdrawal and decreased self-esteem.

2. Paul, represented by separate counsel, did not appeal from the court's order of extension. However, Paul's attorney filed a letter with our clerk of court stating that Paul's "position is similar to that taken by.... [Jane]" on appeal.

Ann returned to their home so the family can continue counseling on an out-patient basis. Having reviewed the record, with deference to the juvenile court which has had the opportunity to hear the testimony and observe the demeanor of these parties, we conclude there is clear and convincing evidence of continued deprivation to support the extension of temporary foster care to "accomplish the purposes" of the court's original order.

Mary Ann Brauhn has counseled with Nancy and Ann since November 1991. She testified the progress with the girls has been very slow, partly because Paul and Jane initially pressured the girls to remain silent and not discuss the circumstances of the abuse. Brauhn testified Paul and Jane's current home environment is not conducive to the children "really progressing in therapy and dealing with their issues." Brauhn believes it is necessary to extend the temporary custody arrangements for the girls' healing to continue. Dr. Barry Johnson, a clinical psychologist who is counseling Paul and Jane, is less certain it is necessary for Nancy and Ann to remain away from their home to benefit from counseling. John Syvertson, who at the time of the January 7, 1993 hearing was the director of Golden Valley and Billings County Social Services in Beach, testified Paul and Jane could not currently provide a safe and secure home environment which would be supportive of the girl's therapy or which would allow them to work through the issues of abuse.

At the March 15, 1993 hearing, the juvenile court was encouraged by the progress toward resolving the family's problems. The court was cautiously optimistic its primary goal of returning the girls to their home could be accomplished in the near future. However, the court was bothered by the history of antagonism and lack of cooperation between the social service employees and Paul and Jane. The court's statements are instructive:

"I really am genuinely pleased to note and do comment sincerely that in a case that seems to last nearly two-and-a-half years and in a case in which the children were so frightened and so intimidated and so traumatized until very recent months, that

there has, in fact, been a lot of progress made . . .

"So from my generally pessimistic view of the case from the beginning for almost two years, I now have reason to change that pessimism to considerable optimism and an expression of hope that this might actually turn out to be a success story through the rather extended counseling efforts we have had. . . .

"Unfortunately, it will take some more time. . . .

"I want to get the government off the back of this family as soon as possible.

"Now is not the time. . . .

"I find that it is necessary by clear and convincing evidence that temporary legal care, custody and control of these children should remain with the director of the Golden Valley County Social Services for a period of not to exceed 15 months from this date. . . .

"These children want to come home. They should come home. It is the object of the law. They will come home. But if we determine that it is harmful to their interests in going home, they won't go home, and if they do, they won't stay home. There are other options available, as I indicated earlier. It looks now that we won't have to consider exercising permanent foster care. We won't have to consider termination of parents' rights, but the progress you have made, the tremendous progress you have made, needs to continue, [Paul] and [Jane], and you need to knock that chip off your shoulder about dealing with the Social Services agency. . . .

"And the goal of the counselor will be to get these children adjusted to a healthy enough state that they can stay in your home. I assure you of that. I know you haven't always believed it, but I think you believe it now. I hope you believe it now. . . .

". . . [Y]ou now stand on the threshold of having two children, [Nancy] and [Ann], who can become again the happy and healthy children that they deserve to be. It just takes a bit more of your coopera-

tion. As soon as we have reached that stage, this case will be terminated...."

The juvenile court made clear its goal is to reunite this family as soon as the court is reasonably assured Paul and Jane can provide a home with proper care for Nancy and Ann's physical, mental, and emotional health. We find no error in the court's 15 month extension of its temporary custody placement.

The orders of the juvenile court are affirmed.

VANDE WALLE, C.J., MESCHKE, LEVINE and NEUMANN, JJ., concur.