531 N.W.2d 303 (1995)
In the Interest of N.W., A Child.
GOLDEN VALLEY COUNTY SOCIAL SERVICES, Petitioner and Appellee,
v.
P.G.S., Respondent, and
J.S., Respondent and Appellant.
In the Interest of A.S., A Child.
GOLDEN VALLEY COUNTY SOCIAL SERVICES, Petitioner and Appellee,
v.
P.G.S., Respondent and Appellant, and
J.S., Respondent.
Civ. Nos. 940347-940350.
Supreme Court of North Dakota.
May 9, 1995.
Glen R. Bruhschwein, Asst. State's Atty., Dickinson, for petitioner and appellee. Appearance by Sandra K. Kuntz.
Eugene F. Buresh, Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for P.G.S.
William G. Heth, Dickinson, for J.S.
VANDE WALLE, Chief Justice.
P.G.S. [Paul, a pseudonym] and J.S. [Jane, a pseudonym] appealed from an order of disposition from the juvenile court, Southwest Judicial District, ordering permanent *304 foster care for N.W. and A.S. [Nancy and Ann, pseudonyms]. We affirm.
Nancy and Ann were determined to be deprived children on February 5, 1991. At that time the juvenile court ordered that the children be placed in the temporary custody of the Golden Valley Social Service Board ["the Board"] for eighteen months. On November 22, 1991, the orders were extended for eighteen months. They were extended for fifteen months in March of 1993. The March 1993 orders of extension, which were affirmed by this court, In the Interest of N.W., 510 N.W.2d 580 (N.D.1994), expired on June 15, 1994.
On April 21, 1994, the Board moved the trial court to extend the March 1993 order for eighteen months from and after June 15, 1994. The hearing on the motion commenced on May 31, 1994, at 10:30 a.m. Before hearing evidence, the juvenile court informed the parties that:
"[A]nother problem we ran into is that occasionally we have a scheduling snag because of the way scheduling is conducted in this district. About every two years the court administrator and the judges might accidentally schedule something for the same day, and I have a very serious matter this afternoon, so we need to conclude this matter by noon, and we'll continue or postpone the hearing if we can't finish by noon, and I don't expect to. By that I don't mean that we are intending to rush anyone at all, but we'll need to continue the case to some later time."
Before testimony was heard, Paul's attorney objected to "proceeding with this matter on this date and ... to the Court entering a temporary order until it can be rescheduled, unless ... in the interim period the custody of the children be given to the grandparents." Jane's attorney "join[ed] in the motion" and asked "that there be a continuance and that during such time ... the grandparents have the children and that [Jane] have unlimited visitation[.]"
The court then heard the testimony of one witness. Mary Ann Brauhn, the therapist for Nancy and Ann, testified on direct examination by the attorney for the Board and was cross-examined by attorneys for Paul, Jane, and the children's guardian ad litem. Immediately following Ms. Brauhn's testimony, the court consulted with the parties and decided that two days would be set aside in August 1994 for further presentation of evidence. The court stated: "The hearing will be continued until then, and in the meantime, I extend the order of disposition on a temporary basis until further order of the Court."
At this time Paul's attorney asked the juvenile court to provide a visitation schedule for Paul and Jane and the children. After stating that he was "discouraged that [Jane] still hasn't done her part as a mother, at least according to the evidence and testimony of Mrs. Brauhn[,]" the court declined "to require [visitation] at this stage."
On June 9, 1994, the juvenile court issued the following order:
"This matter came on for hearing on May 31, 1994 at 10:30 a.m. The parties were not able to fully present their cases in the time allotted. Therefore, the Order of Disposition dated March 17, 1993 is hereby extended to be in full force and effect until September 1, 1994 or upon decision of the court, whichever occurs first."
On August 17, 1994, the Board filed an amendment to its petition for extension of the order of disposition. In its amendment, the Board, relying on subsection 27-20-36(4)(d), N.D.C.C., requested an order of permanent foster care for the children.
When the proceedings reconvened on August 30, 1994, attorneys for Paul and Jane objected, arguing that the juvenile court had no authority because without a proper hearing the order of disposition could not be extended and expired on June 15, 1994. Thus, they argued, custody had "reverted back to the parents."
After a full hearing, the juvenile court issued findings of fact, conclusions of law, and orders of disposition. The court incorporated by reference all of "its earlier Findings of Fact, Conclusions of Law and Order[s] For Disposition and Orders Extending Orders of Disposition in this file." For facts relevant to prior hearings and orders of disposition involving these children, see In the *305 Interest of N.W., supra. In addition, the court made additional relevant findings of fact.
Among the juvenile court's new findings of fact was that Paul had been recently convicted of two counts of Gross Sexual Imposition against Nancy and that these incidents had occurred between August 15 and September 30, 1992, while the children were in the physical custody of Jane and while Paul was under a court order not to be alone with Nancy or Ann.
The juvenile court listed several other relevant findings of fact. In October 1992, the children were removed from Jane's custody and placed in foster care. In April 1993, the Board "concluded that regular visitation between family members and the children was detrimental and stopped most contact and visitation." From April through November 1993, "the children `opened up' in counseling sessions" and disclosed "numerous instances of sexual abuse committed against both of them by [Paul]." The juvenile court found that "[t]hese instances occurred while [Jane] had physical custody of the children and while it was the order of this Court that [Paul] not be left alone with the children."
The juvenile court also found:
"[Jane] has denied [Paul's] abuse against [Nancy and Ann] and has demonstrated an unwillingness to appropriately seek and obtain the necessary medical, psychological and therapeutic care [Nancy and Ann] currently need for their physical, mental and emotional health and morals. [Jane] has demonstrated an inability to provide an environment in which [Nancy and Ann] will benefit from the delivery of medical, psychological and therapeutic care. [Jane's] unwillingness in this finding is not due to lack of financial means. Although [Jane] has testified on two occasions that she now believes [Nancy]'s account of the sexual abuse that resulted in criminal convictions, the Court finds this testimony insincere. [Jane] testified at the criminal trial in August, 1994 that she did not believe those acts occurred. [Jane] has been very supportive of [Paul]."
The juvenile court found that the children have been deprived since the commencement of the case in December 1990 and "continue to be deprived today and are likely to remain deprived in the future." It found that the purposes of previous orders of disposition were not accomplished and that "[t]his has been the fault of [Paul and Jane]." The juvenile court further found that although all reasonable efforts were made to reunite the family, they failed "because of the fault of [Paul and Jane]." It decided that it "is in the best interest of [Nancy and Ann] that they be permanently placed in the care, custody, and control of [the Board], who will be able to place the children in permanent foster care and be able to arrange for the delivery of medical, psychological and therapeutic care and provide an environment which will allow them to benefit from the delivery of those services."
The juvenile court concluded its findings of facts by stating that "[a]ll of the above findings of [f]act are made upon ... clear and convincing evidence." It ordered that the Director "shall have temporary care, custody and control" until August 1, 1995. It ordered that the "the Director of the Golden Valley County Social Service Board[ ] shall have permanent care, custody and control" of the children "commencing on August 1, 1995" until they reach the age of eighteen. The juvenile court listed a series of conditions which would invite it to reconsider the order for permanent custody prior to August 1, 1995, and expressly placed on Paul and Jane the burden of persuading the court to reconsider. Finally, it concluded that "[t]hese procedures do not preclude [Paul and Jane] from exercising any legal rights they may have to petition or move the Court for reconsideration of a temporary or permanent foster care order."
Paul and Jane raise two issues on this appeal. They argue that the juvenile court lacked jurisdiction to issue the order for permanent foster care because the prior order of disposition had expired on June 15, 1994, and the hearing was not held until August 30, 1994. They also argue that the juvenile court lacked the authority to require them to carry the burden of persuasion to convince the court to reconsider its order for permanent foster care.
*306 On appeal, we review juvenile court decisions "upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." N.D.C.C. § 27-20-56(1). "Although we examine the evidence in a manner comparable to the former procedure of trial de novo, we give deference to the juvenile court's decision, because that court has had the opportunity to observe the candor and demeanor of the witnesses." In Interest of N.W., 510 N.W.2d at 581. Paul and Jane do not challenge the sufficiency of the evidence. Questions of law are fully reviewable on appeal. E.g., State v. Konewko, 529 N.W.2d 861 (N.D.1995).
In Anderson v. H.M., 317 N.W.2d 394 (N.D.1982), we recognized a parent's fundamental right to a child and a legislative preference for parental guardianship. We applied principles of due process to a section of chapter 27-20, N.D.C.C., which was not subject to procedural safeguards listed in another section of the chapter. Id. We are again faced with issues of due process, but, in this case, the procedural safeguards listed in the Uniform Juvenile Court Act, chapter 27-20, N.D.C.C. ["the Act"], specifically apply.
An expressed public purpose of the Act is to provide a simple procedure for enforcing its provisions while assuring the parties a fair hearing and enforcing the parties' "constitutional and other legal rights." N.D.C.C. § 27-20-01(4). We have recognized that the primary purpose of the Act is to protect the welfare of children. See, e.g., Matter of the Adoption of K.S.H., 442 N.W.2d 417 (N.D.1989). If a juvenile court finds by clear and convincing evidence that a child is deprived, it may temporarily place the child in the "custody of an appropriate party outside the parental home." In Interest of N.W., 510 N.W.2d at 581; N.D.C.C. § 27-20-30. Section 27-20-36(3), N.D.C.C., provides that "[a]n order of disposition pursuant to which a child is placed in foster care continues in force for not more than eighteen months."
A juvenile court may extend an order of disposition placing a child in foster care only under certain specified conditions. An extension may be made only if:
"a. A hearing is held prior to the expiration of the order upon motion of a party or on the court's own motion;
b. Reasonable notice of the hearing and opportunity to be heard are given to the parties affected;
c. The court finds that the extension is necessary to accomplish the purposes of the order extended; and
d. The extension does not exceed eighteen months from the expiration of [the previous] order. * * *"
N.D.C.C. § 27-20-36(4).
A juvenile court, however,
"may order that the child permanently remain in foster care with a specified care-giver and that the duration of the order be left to the determination of the court if the court determines that:
(1) All reasonable efforts have been made to reunite the child with the child's family;
(2) The deprivation is likely to continue;
(3) With respect to a child under the age of ten, termination of parental rights and subsequent adoption would not be in the best interests of the child; and
(4) The placement of the child in permanent foster care is in the best interests of the child."
Id.
Subsection 27-20-36(4)(a), N.D.C.C., expressly requires that an order of disposition may not be extended unless a hearing is held prior to its expiration.[1] Subsection 27-20-36(4)(b) requires that the parties be given reasonable notice of the hearing and an opportunity to be heard. Paul and Jane were not given adequate opportunity to present their evidence at the May hearing, nor was *307 the continuation the recess of a day-to-day hearing. Thus, a hearing was not held as required by section 27-20-36(4)(a), N.D.C.C., and therefore the June 9, 1994, order extending temporary custody beyond the expiration of the existing order was not issued in compliance with the statute.
The Act does not expressly provide a remedy for parties denied the process provided in section 27-20-36, N.D.C.C. However, in situations which may be analogized to the present situation, the Act provides for dismissal if process is not met. Subsection 27-20-24(2) requires: "If the hearing has not been held within the time limit, or any extension thereof, required by subsection 1 of section 27-20-22, the petition must be dismissed." Subsection 1 of section 27-20-22 provides that a hearing must be held not more than thirty days after the filing of a petition alleging deprivation.
Paul and Jane were given a full hearing on the amended petition. All parties were given every opportunity to offer evidence in support of their positions. The evidence supports the juvenile court's findings of fact, conclusions of law, and orders of disposition. Repeating the process is not likely to change the results. E.g., Sexton v. J.E.H., 355 N.W.2d 828, 830 (N.D.1984) [citing In the Interest of F.H., 283 N.W.2d 202 (N.D.1979), which states: "Although parents have a fundamental right to their child which is of constitutional dimension ..., parental rights will `not be enforced to the detriment or destruction of the happiness and well-being of the child.'"].
We are faced with a situation similar to the one we faced in Anderson v. H.M., supra. In that case we decided that dismissal would serve no purpose. Accord Appeal of A.H., 590 A.2d 123 (D.C.1991); In the Interest of P.M., 201 Ga.App. 100, 410 S.E.2d 201 (1991); Matter of W.L., 260 Mont. 325, 859 P.2d 1019 (1993); In re Amy W., 1995 WL 34789 (Ohio Ct.App.1995) [Unpublished]. Contra In re McCrary, 75 Ohio App.3d 601, 600 N.E.2d 347 (1991); In the Interest of Adam H., 189 Wis.2d 492, 527 N.W.2d 399 (App.1994) [Unpublished]. If we were to dismiss the order of disposition in this case, the Board would be required to file a new petition asking for permanent foster care, a hearing would be held, and the juvenile court would make findings of fact and conclusions of law. It is unlikely that custody of the children would change. Furthermore, the process would be unnecessarily redundant. Dismissing the order of the juvenile court would serve no practical purpose except to delay the opportunity for stability in the lives of the children, and, for that matter, Paul and Jane.
Paul and Jane also argue that the juvenile court erred in placing on them the burden of proof for reconsideration of the orders of disposition. However, the court's inclusion of this condition in its order merely reflected the reality that the deciding factor in its decision was Jane's unwillingness or inability to cooperate in eliminating the conditions of deprivation and providing a proper home for her children. Accord N.D.C.C. § 27-20-36(4)(c) [providing that one of the conditional findings for an order of extension is that the extension is necessary to accomplish the purposes of the original order]. The court's express findings of fact supported its order granting permanent custody to the Board. The temporary disposition to delay the commencement of the order for permanent foster care was included by the court expressly to encourage Jane to change her circumstances so she could be reunited with her children. This provision did not offend the rule that the petitioner bears the burden of proving the allegations in the petition. See N.D.C.C. § 27-20-24(3); § 27-20-29(3).
We affirm.
SANDSTROM, NEUMANN and MESCHKE, JJ., concur.
LEVINE, Justice, dissenting.
I agree with the majority's analysis of the requirements of NDCC § 27-20-36(4), but not with its application of Anderson v. H.M., 317 N.W.2d 394 (N.D.1982), a case which opened the door to ignoring Uniform Juvenile Court Act statutory violations. I believe there is a purpose to be served by reversing, and so I dissent.
The legislature has passed very specific timelines for all parties, particularly the state and the court, to abide by in juvenile proceedings. By holding that violations of these *308 timelines are without consequence, we condone an institutional disregard for them in cases like Anderson, as well as in this case. As judges become fewer, the pressure on trial courts will be greater to "continue" statutorily non-continuable matters to accommodate other "serious" matters. However, by imposing these timelines, the legislature has decided that deprivation orders extending the state's custody over children are "serious," notwithstanding the parties' or the court's differing priorities.
Of course, as the majority notes, the primary purpose of the Juvenile Court Act is to protect the welfare of children. But that protection comes from the substance and procedure found in our statutes (as well as the federal and state constitutions). Parents' rights and children's rights must be protected by the process due them under the law. Whether the deprivation of the process due a parent turns out to be "detrimental" to the well-being of a child cannot be the driving force to achieve a desired result. Indeed, section 27-20-36-(4)(a), (b) and (d), makes it clear that the court has the power to extend an order of deprivation only if a hearing with notice and opportunity to be heard is held within the time specified in the prior order, in this case, fifteen months. This did not happen. The trial court was without authority to do what it did, that is, to "continue" the hearing, and the petition for extension should be dismissed and the order of disposition reversed.
NOTES
[1] Section 27-20-29(5), N.D.C.C., allows the court to continue hearings on petitions "to receive reports and other evidence bearing on the disposition[.]" In the present case, the continuance was ordered to open the court's calendar for a civil proceeding. This same subsection of the Act which provides for continuances specifically requires that "[i]n scheduling investigations and hearings the court shall give priority to proceedings in which a child is in detention or has otherwise been removed from his home before an order of disposition has been made."