2001 ND 37

**In the Interest of C.H., A.H., M.H. and A.H., Minor Children.**

**L.J. Bernhardt, Petitioner and Appellee,**

v.

**C.H., a child, Respondent,**

and

**A.H., a child, M.H., a child, A.H., a child, D.H., their mother, Respondents and Appellees,**

and

**M.H., their father, Respondent and Appellant.**

**No. 20000119.**

Supreme Court of North Dakota.

Feb. 20, 2001.

James A. Hope, Assistant State's Attorney, Dickinson, ND, for petitioner and appellee.

Sandra K. Kuntz, Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, ND, for respondents and appellees A.H., M.H., and A.H., minor children.

Rodney E. Pagel, Pagel Weikum Law Firm, Bismarck, ND, for respondent and appellee D.H.

David F. Senn, Senn Law Office, Dickinson, ND, for respondent and appellant M.H.

VANDE WALLE, Chief Justice.

[¶ 1] M.H., father of the minor children, appealed the juvenile court's April 10, 2000, order granting full placement

authority of children A.H., M.H., and A.H. to the Director of Stark County Social Service Board and denying M.H.'s motion to change the custodial agency. We affirm.

I

[¶ 2] M.H. was granted custody of the four minor children on April 26, 1999, because of a significant change of circumstances since the original child custody determination granting custody to D.H., the mother, in 1995. The trial court found the mother had frustrated visitation between the father and the children and had attempted to alienate the children from their father. Stating the court had exhausted remedies available to correct the mother's misbehavior, and because she had been a stubborn and defiant custodial parent, the court concluded the only option available was to change custody. The court also found in the order dated April 26, 1999, a change in custody to their father was in the best interests of the children. D.H. appealed that order to this Court.

[¶ 3] The physical transfer of the children to the father's custody occurred on May 3, 1999. The children, who had been living and attending school in Bismarck, moved to live with their father in Dickinson. The children resisted the change and expressed their contempt for their father. The children resorted to acting-out behavior such as teasing and taunting the father, damaging walls and furniture in the home, verbally abusing their father, and making threats toward their father. On June 7, 1999, one of the children told a Stark County social worker that the father did not care about the kids and that he should smash the father's head against the wall so they could all go home. On June 21, 1999, and July 8, 1999, similar statements were repeated. On June 7, 1999, one of the other children made suicidal statements which were repeated on June 21, 1999, and July 8, 1999.

[¶ 4] On July 12, 1999, the children ran away when the father allowed them to travel to Bismarck to attend the Prairie Rose Games. On July 17, 1999, the children surrendered themselves to the custody of Stark County Social Services.

[¶ 5] The Director of Stark County Social Service Board petitioned the juvenile court for the temporary care, custody and control of each of the children under the authority of N.D.C.C. § 27–20–03(1)(a), because the children were unruly. On September 2, 1999, the juvenile court found the children unruly and gave the Director of Stark County Social Service Board temporary custody of the children. The juvenile court granted authority to place the oldest child in any location consistent with her best interests because she would be 18 years old within three months. The juvenile court restricted placement for the three younger children by requiring the director to make his placement decisions within the context of the district court's April 26, 1999, order and any subsequent changes to that order made by the North Dakota Supreme Court on the appeal of the April 26 order. The September 2, 1999, order by the juvenile court granting temporary custody to the Director of Stark County Social Service Board was not appealed.

[¶ 6] The oldest child was placed with the mother. The three younger children were placed in foster care in Bismarck. On January 3, 2000, this Court affirmed the district court's April 26, 1999, order changing custody to the father, however the denial of visitation for the mother for one year, also a part of that order, was reversed.[1]

[¶ 7] The Director of Stark County Social Service Board subsequently petitioned the juvenile court for full placement au-

1. We do not cite the prior case appealing the divorce order because this is a proceeding of juvenile court and N.D.C.C. § 27–20–56(1) states the names of the children may not appear on the record on appeal.

thority for the three younger children. On April 10, 2000, following a hearing on March 15, 2000, the juvenile court granted the director full placement authority to place the children in a location consistent with their best interests and to make reasonable efforts to reunify the children with their family. The juvenile court found the children had failed to establish a relationship with their father, both during the time placed in his home and during visitation while in foster care. The juvenile court also found the children were under stress in foster care with further deterioration. Significantly, for purposes of this appeal, the court, relying on the testimony of the children's counselor, found there would "probably" be no additional harm to the children if they were placed with the mother under proper conditions and safeguards. The court also found Stark County Social Services had made reasonable efforts to reunite the children with their father. The Director of Stark County Social Service Board promptly placed the children with their mother.

## II

[¶ 8] M.H., the father, argues the juvenile court erred in granting full authority for placement to the Director of Stark County Social Service Board. The father also claims the juvenile court has no right to issue an order contravening the divorce order.

[¶ 9] In an appeal from an order of the juvenile court, our review is comparable to a trial de novo in that we may reexamine the evidence. *Interest of A.R.*, 2000 ND 130, ¶ 3, 612 N.W.2d 569. Our review is thus not limited to determining whether the juvenile court's findings are clearly erroneous. *Interest of R.K.E.*, 1999 ND 106, ¶ 4, 594 N.W.2d 702. Nevertheless, we give "appreciable weight" to the findings of the juvenile court because that court heard the testimony and had the opportunity to observe the candor and demeanor of the witnesses. *See* N.D.C.C.

§ 27–20–56(1); *Interest of R.D.B.*, 1998 ND 15, ¶ 9, 575 N.W.2d 420.

[¶ 10] The juvenile court has exclusive original jurisdiction over proceedings concerning unruly children. N.D.C.C. § 27–20–03(1)(a). The definition of an unruly child includes a child who "[i]s habitually disobedient of the reasonable and lawful commands of the child's parent, guardian, or other custodian and is ungovernable; or who is willfully in a situation dangerous or injurious to the health, safety, or morals of the child or others" as described in N.D.C.C. § 27–20–02(17)(b). The juvenile court found the children to be unruly and each in need of treatment or rehabilitation. This finding was supported by evidence of the children's specific actions and behavior including verbal abuse of their father, destruction of walls and furniture, physically striking their father, threats, suicidal statements, and running away. On the record in this case, the juvenile court had jurisdiction to grant temporary custody of the unruly children to the Director of Stark County Social Service Board. Notwithstanding the custody provision in the decree of divorce, such authority is necessary in order to effect one of the public purposes of the Uniform Juvenile Court Act, "[t]o provide for the care, protection, and wholesome moral, mental, and physical development of children coming within its provisions." N.D.C.C. § 27–20–01(1).

[¶ 11] The father also argues the juvenile court erred because there was insufficient evidence to establish a significant change of circumstances to warrant a modification of the September 2, 1999, order as required by N.D.C.C. § 27–20–37(2), which states "an order of the court may also be changed, modified, or vacated on the ground that changed circumstances so require in the best interest of the child." The juvenile court found the children had not established a relationship with their father. The juvenile court also found the children under stress in foster care, there was a possibility of further deterioration,

and there would probably be no additional harm to the children if they were placed with the mother. The juvenile court further found Stark County Social Services made reasonable efforts to reunite the children with their father. The court did find changes of circumstances since the September 2, 1999, order. The juvenile court's modification of the September 2, 1999, order to grant full placement authority of the three younger children, rather than restricting their placement to be made within the context of the district court's April 26, 1999, order, was supported by a change in circumstances as provided by N.D.C.C. § 27–20–37(2).

### III

[¶ 12] After being given full placement authority, the Director of Stark County Social Service Board, as custodian, had broad discretion with placement as described in N.D.C.C. § 27–20–38:

> Rights and duties of legal custodian. A custodian to whom legal custody has been given by the court under this chapter has the right to the physical custody of the child and the right to determine the nature of the care, placement, and treatment of the child, including ordinary medical care as well as medical or surgical treatment for a serious physical condition or illness which in the opinion of a licensed physician requires prompt treatment, except for any limits the court may impose. The custodian also has the right and duty to provide for the care, protection, training, and education, and the physical, mental, and moral welfare of the child, subject to the conditions and limitations of the order and to the remaining rights and duties of the child's parents or guardian.

Stark County Social Services had the obligation and right to determine the nature of the care, placement and treatment of the children consistent with their best interests.

[¶ 13] The children's counselor, Dr. Doppler, testified the children's relationship with their mother was very positive and she was their primary source of psychological support. In contrast, Dr. Doppler testified the children had never developed a good relationship with their father and now they were contemptuous and negative toward their father. Placement with their father would be problematic. The guardian ad litem report filed March 13, 2000, coincides with this analysis and recommends placement with the mother.

### IV

[¶ 14] The father also argues the juvenile court erred by denying his motion to change the custodial agency. The record supports the juvenile court's finding Stark County Social Services made considerable and reasonable efforts to prevent the removal of the children from the father's home. The Director of Stark County Social Service Board referred to the expertise of other social workers in his agency as well as outside agencies and professionals such as Burleigh County Social Services, the Family Safety Center, psychologists from Badlands Human Service Center, and Dr. Doppler. Faced with the evidence of this case, the juvenile court did not err in denying the father's motion to change the custodial agency.

[¶ 15] Previous custody proceedings of this family indicate the current situation was directly the fault of the mother, who stubbornly frustrated the children's visitation with their father in the years since the divorce and alienated the children against their father. In *McAdams v. McAdams*, 530 N.W.2d 647, 650 (N.D.1995), we held a parent who willfully alienates a child from the other parent may not be awarded custody based on that alienation. In *McAdams* we reversed the district court because the "sole rationale employed by the district court for splitting custody was the alienation." *Id.* We also held in *McAdams* the district court failed to properly consider the children's best interests. *Id.* In this case the situation has progressed beyond *McAdams*. This is no longer a custody

determination case, rather it has unfortunately evolved into a juvenile placement case. Far from deciding on a "sole rationale" of alienation, the juvenile court here considered the best interests of the children in its initial decision of granting temporary custody to Stark County Social Services, as well as in its consideration of the motion for full placement authority. The juvenile court based the determination of full placement authority on testimony from social workers, psychologists, and the children's counselor, Dr. Doppler. We do not affirm the award of custody to the mother on the basis of her actions; rather we affirm the juvenile court's decision to give full placement authority to Stark County Social Services, which has been granted custody upon a finding of unruliness of the children.

■ [¶ 16] Although the underlying standard in both the juvenile court and the divorce court is the best interests of the child, the divorce court applies that standard only between the two parents. The juvenile court must apply the standard on a broader scale which includes giving custody not only to the parents but may include placement with a foster parent or, if the child is found to be delinquent, an institution, or even terminating the parental rights if the juvenile court finds the children to be deprived. N.D.C.C. §§ 27–20–31, 27–20–32, 27–20–44. ·

[¶ 17] The mother's behavior has poisoned the children's relationship with their father, a result the court has hoped to prevent. However, action by the court in this case was apparently too little and too late. The damage has been done and the children's relationship with their father is poisoned by the mother's actions. We recognize the result of the juvenile court order is to effectively reverse the prior custody order in the amended divorce decree, as affirmed by this Court. This case signals the need for earlier and effective intervention in cases such as this one, with truly egregious examples of one recalcitrant parent frustrating visitation and alienating children against the other parent.

[¶ 18] We are aware the case may be viewed as one in which one party is rewarded for her disobedience to court orders. It may be understood for the present as such a case. However, the future of these children, as a result of this disobedience, is clouded. The juvenile court attempted to protect the welfare of the children which is the underlying obligation of the court under the Uniform Juvenile Court Act, N.D.C.C. ch. 27–20. *In the Interest of N.W.*, 531 N.W.2d 303, 306 (N.D.1995).

[¶ 19] We affirm the juvenile court's order granting full placement authority to the Director of Stark County Social Service Board and denying M.H.'s motion to change the custodial agency.

[¶ 20] WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., WILLIAM W. McLEES, D.J., concur.

[¶ 21] McLEES, D.J., sitting in place of KAPSNER, J., disqualified.

SANDSTROM, Justice, dissenting.

[¶ 22] "We hold a parent who willfully alienates a child from the other parent may not be awarded custody based on that alienation." *McAdams v. McAdams*, 530 N.W.2d 647, 650 (N.D.1995).

[¶ 23] The majority acknowledges, at ¶ 15, "Previous custody proceedings of this family indicate the current situation was directly the fault of the mother, who stubbornly frustrated the children's visitation with their father in the years since the divorce and alienated the children against their father."

[¶ 24] Here the majority, ignoring our case law, affirms de facto custody to the mother, while acknowledging, at ¶ 18, that "the future of these children, as a result of [the mother's conduct], is clouded."

[¶ 25] This toxic situation has been created by the mother's injection of her

venom into her children. Sadly, the director of the Stark County Social Service Board has aided and abetted the mother and exacerbated the situation, ending any remaining hope for these children, and providing encouragement for other toxic parents who might similarly poison their children.

[¶ 26]   I would reverse.

[¶ 27]   Dale V. Sandstrom